COBB, Judge.
The appellant, Robert Marks, appeals from a summary judgment entered in favor of the appellee, M.S.F. Management Corp. formerly known as Central Florida Financial Services (Central Florida). Marks is a registered real estate salesman, and the co-plaintiff below, Pembroke Realty, was his former employer-broker. The gravamen of the eight-count complaint involves a claim for a brokerage commission due Marks as the result of a sale of the Ocala Jockey Club by Central Florida to a Virginia development corporation, the Rex Group, Inc. For the reasons set forth below, we affirm.
The Ocala Jockey Club is a residential development project conceived by Marks which includes a farm and recreational facilities. Initially, Marks started the development through his wholly owned corporation, Ocala Jockey Club, Inc. (OJCI). His corporation then entered into a joint venture agreement with Central Florida. A dispute between the joint venturers ensued, and OJCI agreed it would sell its interest in the joint venture to Central Florida. Marks became a third-party beneficiary of the contract when OJCI and Central Florida agreed in 1983 that Marks, individually, would be given a non-exclusive right to receive a commission in the event he could procure for Central Florida a buyer for all or part of the Ocala Jockey Club prior to July 1, 1984. The contract provided:
If Marks introduces a prospective Buyer to the project property during the term of the agreement and advises CFFS of the identity of such prospective buyer and a Contract for Sale is subsequently executed with such Buyer within six months after the expiration of the term of this agreement, Marks shall nevertheless be entitled to receive the payment described above (i.e., the commission) with respect to such sale.
Although execution of the sale contract by Central Florida and the prospective buyer would entitle Marks to his commission under the terms of the above paragraph, another provision of the OJCI-Central Florida agreement provided that the commission would be due to Marks at time of closing. In two letters of June and July, 1984, Marks informed Central Florida that he had introduced representatives of the Rex Group to the Ocala Jockey Club. In October, 1984, the Rex Group and Central Florida entered into a contract for the immediate sale of a portion of the Ocala Jockey Club including an option to acquire the remainder. Marks alleges that on August 27, 1985, Central Florida and Rex Group closed on the deal for a sale price of $4,299,000.00 and that he is entitled to a commission from this sale.
The threshold issue is whether Marks and Pembroke are proper plaintiffs. Apparently, the trial court found neither was a proper party by virtue of section 475.42(1)(d), Florida Statutes (1983) which provides in part that no salesman shall commence an action for a commission against any party except his broker at the time the cause of action is alleged to have arisen.[1] When the commission agreement *140 was made, Marks’s real estate license was registered with a broker, L.K. Edwards & Associates (Edwards). Real estate salesmen are prohibited from operating without brokers; commission agreements made by salesmen are enforceable by the broker who is their employer at the time the services entitling the salesman to compensation are rendered. § 475.42(1)(b), Fla.Stat. (1983); see Fuller v. Alberts, 382 So.2d 113 (Fla. 2d DCA 1980); Geneva Investment, Ltd. v. Trafalgar Developers, Ltd., 274 So.2d 581 (Fla. 3d DCA) cert. discharged, 285 So.2d 593 (Fla.1973) (holding a real estate brokerage contract is not void ab initio where the broker is unlicensed; it is only necessary that the broker be licensed when services are rendered). Here, the contract for sale between Central Florida and Rex Group, Inc. was entered into on October 31, 1984 while Marks worked for Edwards. Therefore, Edwards, although unaware of Marks’s agreement with Central Florida, acquired an interest in the agreement.
Marks asserts that his broker, Edwards, told him on April 8, 1985, that he was going out of business. Marks thereupon terminated his relationship with Edwards, and transferred his license to Pembroke Realty, the co-plaintiff below. When Marks left Edwards’s employ, he did not (and could not) take any interest Edwards had acquired in the commission absent an assignment from Edwards. Marks’s new broker, Pembroke, never acquired any interest in the commission agreement because it was not the employing broker when Marks’s services were performed in 1984. Thus, Pembroke lacks standing to sue under the 1983 brokerage agreement, and the trial court correctly entered summary judgment against Pembroke on all counts.
Section 475.42(1)(d), Florida Statutes (1983), provided that a salesman may not sue anyone other than his employer-broker at the time the cause of action is alleged to have arisen. Subsequent clarifying legislation indicates that the cause of action arises at the time when the services giving rise to the commission are rendered. See Laws 1985, c. 85-90, § 1, eff. Oct. 1, 1985. Only Marks’s broker at the time he performed the services can sue the seller directly. Thus, the summary judgment as to Counts I, II, III, V, VI (claims by Marks directly against Central Florida for the commission based upon breach of contract, quantum meruit, reformation, and fraudulent inducement) was correct because of the statutory bar under the 1983 statute (as construed by the subsequent clarification). Despite the shotgun approach and varied labels for these multifarious counts, Marks cannot do indirectly that which he is forbidden to do directly: sue Central Florida (MSF) for his commission rather than suing Edwards for it.
Count IV (civil conspiracy) is essentially a claim for intentional interference with a contractual relationship, and it is axiomatic that a party, M.S.F. Management, may not tortiously interfere with its own contract. United of Omaha Life Ins. Co. v. Nob Hill Associates, 450 So.2d 536 (Fla. 3d DCA), review denied, 458 So.2d 274 (Fla.1984); N.A. Berwin v. American Safety Razor Corp., 108 N.Y.S.2d 677 (N.Y.Sup.Ct.1951).
Yet, as Marks argues, there are two transactions under the applicable 1983 statutes which fall outside the purview of section 475.42(1)(d), and would potentially permit Marks to sue M.S.F. directly. First, an owner of real property may sell, exchange, or lease his own property without the services of a broker and without concern for Chapter 475. See § 475.011(2), Fla.Stat. (1983);[2] Florida Real Estate Commission v. McGregor, 336 So.2d 1156 (Fla.1976). *141 Contrary to Marks’s assertions, this exemption is unavailable to him because the sale of the Ocala Jockey Club by Central Florida to Rex Group, Inc. was not a sale of Marks’s real property. As Marks’s counsel readily conceded at oral argument, the OJC property was held by a corporation, Ocala Jockey Club, Inc., not by Marks, at the time of the contract with Central Florida. Marks did not own the property individually at any time relevant to the transaction. Marks has not argued that he was selling the property as an employee of OJCI, nor that OJCI had an interest in the property at the time of the sale to the Rex Group. The warranty deed to Rex Group shows Central Florida as the seller. Therefore, summary judgment under Count VII (claim for commission as sale by owner) was proper based upon the undisputed facts.
That leaves only Count VIII and the second category of transactions falling outside the purview of Chapter 475, namely, those involving the sale of a business enterprise. See Lutsch v. Smith, 397 So.2d 337 (Fla. 1st DCA 1981); Rizzo v. Schwebke, 348 So.2d 1180 (Fla. 3d DCA 1977), cert. dismissed, 357 So.2d 187 and cert. denied, 359 So.2d 1218 (Fla.1978). Under the current statutes, brokers of business enterprises fall within the purview of Chapter 475. See § 475.01(1)(c), Fla.Stat. (Supp. 1988). Prior to 1983, sales of business enterprises fell outside of Chapter 475. When the statute was amended to include and thereby regulate “business brokers” after January 1, 1982, the legislature apparently created a two year grace period for individuals who deal in business enterprises or business opportunities. § 475.17(3), Fla.Stat. (1983).
On appeal Marks urges the sale of a business enterprise occurred during this two year grace period. However, Marks misunderstands the business enterprise theory. As argued by the appellees, it is not the 1983 sale between OJCI and Central Florida, but rather the 1985 sale between Central Florida and Rex Group, Inc. which must constitute the sale for which Marks served as a business broker; it is the services performed in connection with the latter transaction which must fall within the statutory grace period.
From a review of the entire record it does not appear that Marks could amend his complaint to include a valid count under this theory. The 1983 commission agreement was entered into within the two year grace period, but apparently the contract for sale between Central Florida and Rex Group, Inc. was executed on October 31, 1984, some 10 months after the grace period elapsed, and Marks’s earlier letter to Central Florida apprising them of his services was in June, 1984, some six months after the grace period elapsed. Nothing in the record suggests that his services were performed prior to January 1,1984. Therefore, Count VIII fails to state a cause of action under the business enterprise theory.
Accordingly, the summary judgment in favor of M.S.F. Management is hereby affirmed in all respects.
AFFIRMED.
DAUKSCH and GOSHORN, JJ., concur.

. Section 475.42(1)(d), Florida Statutes (1983) reads as follows:
475.42 Violations and penalties.—
(1) VIOLATIONS.—
******
(d) No salesman shall collect any money in connection with any real estate brokerage transaction, whether as a commission, deposit, payment, rental, or otherwise, except in the name of the employer and with the express consent of the employer; and no real estate salesman, whether the holder of a valid and current license or not, shall commence or maintain any action for a commission or compensation in connection with a real estate brokerage transaction against any person ex *140 cept a person registered as his employer at the time the cause of action is alleged to have arisen.

. Section 475.011(2) reads as follows:
475.011 Exemptions.— This chapters does not apply to:
******
(2) Any individual, corporation, partnership, trust, joint venture, or other entity which sells, exchanges, or leases its own real property; however, this exemption shall not be available if and to the extent that an agent, employee, or independent contractor paid a commission or other compensation strictly on a transactional basis is employed to make sales, *141 exchanges, or leases to or with customers in the ordinary course of an owner’s business of selling, exchanging, or leasing real property to the public;