598 So.2d 85 (1992)
CH2M HILL SOUTHEAST, INC., and Madison Management Group, Inc., Appellants,
v.
PINELLAS COUNTY, Florida, Appellee.
Nos. 90-02027, 90-02028, 90-03562 and 90-03563.
District Court of Appeal of Florida, Second District.
March 13, 1992.
Rehearing Denied May 19, 1992.
*86 Arthur J. England, Jr., Linda Ann Wells, and Charles M. Auslander of Fine Jacobson Schwartz Nash Block & England, Miami, and Stephen M. Bull and Guy S. Haggard of Bull & Haggard, Orlando, for appellant CH2M Hill Southeast, Inc.
Jeffrey S. O'Brien of Masterson, Rogers, Patterson, Masterson, O'Brien & Lopez, P.A., St. Petersburg, and G. Lee Garrett, Jr. and Stephen O. Kinnard of Jones, Day, Reavis & Pogue, Atlanta, for appellant Madison Management Group, Inc.
John T. Allen, Jr., of John T. Allen, Jr., P.A., Michael J. Keane of Baynard, Harrell, Mascara, Ostow & Ulrich, P.A., St. Petersburg, and Alan C. Sundberg and Sylvia H. Walbolt of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, for appellee Pinellas County.
DANAHY, Acting Chief Judge.
The appellant CH2M Hill Southeast, Inc., (Hill) is the successor to Black, Crow & Eidness, Inc., which was the design engineer for a water distribution pipeline running 13.5 miles from the Pasco-Pinellas County line into Pinellas County and described by Pinellas County as the heart of its water system. The appellant Madison Management Group, Inc., (MMG) is the successor to Interpace Corporation, which manufactured the pipeline segments. Each appellant separately appeals from a final judgment awarding compensatory damages of 19.8 million dollars against them and in favor of Pinellas County, and 5 million dollars in punitive damages against MMG, based on a determination by the trial judge as trier of fact that the pipeline is defective and must be completely replaced. For the reasons stated in this opinion, we reverse the final judgment, vacate the cost award, and remand for a new trial.
On March 24, 1975, Hill's predecessor entered into a contract with Pinellas County to perform specified engineering services in connection with the design of the pipeline which is the subject of this litigation (the "Hill Contract"). The pipeline was to consist of 3,400 pipe segments, each *87 approximately 20 feet in length. The pipe segments were to be made with a concrete inner core, steel cylinder, concrete outer core wrapped with high-strength wire, and covered with slurry and mortar coatings. For its design of the pipeline, Hill's predecessor was paid a fee of $364,939.27.
On February 25, 1977, MMG's predecessor, Interpace, formally executed a contract with the County to manufacture the pipeline segments (the "Interpace Contract"). Hill was not a signatory nor a party to this contract. The contract was awarded to Interpace as the lowest responsive bidder on the project. Throughout the summer of 1978, Interpace manufactured the pipeline segments at its Lacoochee, Florida, plant. The pipeline segments were delivered by truck to the job site and installed. On October 2, 1978, the County accepted the pipeline, and it began operation.
Over time, the County became convinced that at least some of the pipeline segments were defective and that the integrity of the entire pipeline was in doubt. In November 1983 the County filed this damage action against Hill and MMG. The nonjury trial began in January of 1989 and ended in January of 1990, producing a trial transcript of more than 14,000 pages. The record on appeal is contained in 265 volumes with an index of 437 pages, and the final judgment is 200 pages long.
We appreciate and are sensitive to the great amount of judicial labor required in a nonjury trial of such length involving complicated issues. We are also aware of the significance of this case and its outcome to the residents of Pinellas County. Notwithstanding, for the reasons set forth below and based upon the analysis undertaken in this opinion, we are constrained to reverse because of trial events which occurred in October of 1989. We cannot ignore the wealth of settled law commanding the result we reach in this matter.
On September 20, 1989, the County had completed presentation of its case in chief and Hill had presented its case. When proceedings resumed on October 10, Stephen Schooley, a younger member of Hill's trial team, presented a lengthy written motion by Hill to disqualify the trial judge. At his request, Mr. Schooley was allowed to present the motion "in open court," and he proceeded to review its allegations. He stated that the grounds for the motion arose from the trial judge's conduct throughout the trial, which cumulatively convinced Hill, the client, that the trial judge was biased in favor of the County. Mr. Schooley's presentation consumed 22 pages of the trial transcript. At its conclusion, the trial judge said to Mr. Schooley that the motion involved matters which "exceed the duties and boundaries and parameters of advocacy, but go into another area which I will charitably not describe."
The trial judge then invited MMG to join in the motion, and MMG did in fact file a similar motion to disqualify. The trial judge said he had no intention of "ruling on it today." He stated that he would hear counsel for the County in argument on the motion. The proceedings on October 10 concluded with these remarks from the trial judge:
It reminds me of a story, this motion does, and the framework of this case, of  two days before Christmas, a good samaritan was walking home in the snow. In his arm were two sacks  arms were two sacks of groceries, and in one sack was a ham.
A fellow that was down on his luck came out of the alley and said, "Sir, would you give me something to eat? I'm hungry." The good samaritan gave him the hamhock from the ham.
And the next night, the good samaritan's walking down the same place. It's dark and in the snow. And the fellow he'd given the ham to, by that time, had eaten all the ham and thought that, within his province, whatever he was doing, it would be appropriate to attempt to rob the good samaritan with the hamhock.
When proceedings resumed the next morning, the trial judge told Mr. Schooley that he would afford him the opportunity to withdraw the motion to disqualify. Mr. Schooley declined on behalf of Hill and suggested that the trial judge was not permitted *88 to proceed further with respect to the disqualification issue. The trial judge said, however, that he was going to hear counsel for the County on the matter. He told Mr. Schooley:
Many years ago, someone told me that there were basically two types of untruths; lies and damn lies. But you, sir, in your motion, have crystallized yet a third one. And up to this point, it was a peephole, and now it's a broad horizon. And that is, quoting out of context.
You, sir, in your motion, have taken liberties with the truth that a common cur would not take with a streetside fireplug.
Five days later, on October 16, counsel for the County presented arguments against the motions to disqualify, arguments which consumed almost 100 pages of the trial transcript. The trial judge denied the motions.
Section 38.10, Florida Statutes (1989), and Florida Rule of Civil Procedure 1.432 govern disqualification of a trial judge. Both the statute and the rule are clear that upon presentation to the trial judge of a legally sufficient motion by a party to disqualify, the trial judge shall proceed no further. The trial judge may not debate the allegations contained in the motion, pass on the truth of its allegations, or adjudicate the question of disqualification. See Townsend v. State, 564 So.2d 594 (Fla. 2d DCA 1990). The trial judge's actions in this case exceeded the proper scope of his inquiry. It was error for him to continue in the case and a new trial is required.
We hold further that Hill is entitled to judgment as a matter of law on all issues save one, and the new trial as to Hill shall be limited to the one issue dealt with below.
The County asserted claims against Hill based on tort liability and liability for breach of contract. It is a well established rule in Florida that tort damages are not recoverable in a breach of contract action, absent an accompanying independent tort. Lewis v. Guthartz, 428 So.2d 222 (Fla. 1982). To have an actionable tort claim in a breach of contract case, there must be appropriate pleadings and proof of conduct resulting in personal injury or property damage beyond the breach of the contract. J. Allen, Inc. v. Humana of Florida, Inc., 571 So.2d 565 (Fla. 2d DCA 1990). A plaintiff may not recover damages on a theory of liability not pled. Lee County Bank v. Winson, 444 So.2d 459 (Fla. 2d DCA 1983). In this case the County failed to plead an independent tort separate from its breach of contract claim against Hill.
In Count IX of its amended complaint titled "Negligence Against CH2M Hill Southeast, Inc.," the County alleged:
66. The Defendant, CH2M HILL SOUTHEAST, INC., carelessly and negligently performed its duties owed to the Plaintiff, PINELLAS COUNTY, under their contract, Plaintiff's Exhibit "B," in the following manner:
In Count X titled "Breach of Contract of CH2M Hill Southeast, Inc.," the County alleged:
70. The Defendant, CH2M HILL SOUTHEAST, INC., breached its contract with the Plaintiff, PINELLAS COUNTY, in the manner described in Paragraph 66.
Thus, the County itself characterized Hill's "negligence" in the performance of the contract as in fact constituting the breach of the contract. The County argues that Hill waived any deficiency in the pleadings because it never objected at trial to the County's reference to statutes and regulations, upon which the County bases its tort theories, as being beyond the scope of the pleadings. We disagree. Because the County failed to plead a separate and independent tort, it is foreclosed from recovery in this action against Hill on any tort theory of liability.
With respect to the breach of contract claim, it was the position of the County that Hill had the contractual responsibility to oversee the manufacture of the pipeline segments. The County argued that the Hill Contract imposed such duties on Hill. Our reading of the Hill Contract, a function wholly within our scope of review, *89 Folwell v. Bernard, 477 So.2d 1060 (Fla. 2d DCA 1985), has led us to the opposite conclusion. We find no provision in that contract which imposed upon Hill a responsibility with respect to the pipe manufacturing process.
But the County further argues that responsibilities for the pipe manufacturing process were imposed upon Hill in the Interpace Contract, even though Hill was neither a party nor a signatory to that contract. The County reaches this conclusion based on application of the doctrine of contract merger. In support of its argument, the County cites two cases: J.M. Montgomery Roofing Co. v. Fred Howland, Inc., 98 So.2d 484 (Fla. 1957), and Northwestern Bank v. Cortner, 275 So.2d 317 (Fla. 2d DCA 1973). Each of these cases applied the doctrine of merger to allow two contracts to be read together. The contracts in each case were closely related in time. But in neither case did the court impose contract obligations under the second contract on a party to the first contract who was not also a party or a signatory to the second contract. It remains the rule in Florida that ordinarily a contract cannot bind one who is not a party thereto or has not in some fashion agreed to accept its terms. To create a valid contract there must be reciprocal assent to a certain and definite proposition. In re Estate of Donner, 364 So.2d 742 (Fla. 3d DCA 1978). No responsibilities contained in the Interpace Contract could be imposed upon Hill by "merger" of the Interpace Contract and the Hill Contract.
Additionally, the County asserted that Hill had breached its contractual design responsibilities by allowing the pipe manufacturer to use class IV wire for the pipeline. That is an issue of fact which must be determined in a new trial.
Finally, we have sua sponte consolidated the instant matter with Case Nos. 90-03562 and 90-03563 for decisional purposes. Thus, in light of our determination to reverse and remand this proceeding for a new trial, we vacate the cost award challenged by MMG and Hill in Case Nos. 90-03562 and 90-03563.
Reversed and remanded for a new trial in accordance with this opinion.
CAMPBELL and FRANK, JJ., concur.