698 So.2d 1238 (1997)
CH2M HILL SOUTHEAST, INC., Appellant,
v.
PINELLAS COUNTY, Florida, Appellee.
No. 95-02932.
District Court of Appeal of Florida, Second District.
June 20, 1997.
Rehearing Denied September 10, 1997.
*1239 Arthur J. England, Jr., Charles M. Auslander and John G. Crabtree of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami; Benjamin H. Hill, III, David T. Knight and Robert B. Gough, III, of Hill, Ward & Henderson, P.A., Tampa, for Appellant.
Michael J. Keane, Shirin M. Vesely, and Richard S. Maselli of Keane & Reese, P.A.; Sarah M. Chaves of Ostow & Chaves, P.A., St. Petersburg, for Appellee.
QUINCE, Judge.
CH2M Hill Southeast, Inc. (Hill) appeals a final judgment in favor of Pinellas County, Florida (the County) alleging, inter alia, that the County failed to establish Hill's breach of the applicable standard of care for professional engineers in 1977. Because we disagree, we affirm the judgment in favor of the County. However, we reverse the award of prejudgment interest on $10,000,000.00 awarded to replace the County's ailing pipeline because this figure does not represent out-of-pocket expenditures by the County. On all other issues raised, we affirm without further comment.
In March 1975 the County hired Hill to design a 13.5 mile, 60-inch, water-bearing pipeline. Hill had, since the 1960s, been the exclusive engineers for Pinellas County, and had designed most of the County's water system. Hill's design specifications for this project called for the pipe to be manufactured in conformity with a national standard adopted by the American Water Works Association (AWWA). The AWWA standard to be used for this project was C301.
Interpace Corporation (Interpace), a concrete pipe manufacturer, submitted a bid and proposal to the County and to Hill. In its proposal, Interpace indicated its intent to use "class IV" prestressed wire to manufacture pipe segments for the project. AWWA specification C301 required that "class II" wire or any wire of "higher tensile strength" be used to manufacture the pipe. Hill had worked with Interpace prior to the County project, and was aware that Interpace used class IV wire to manufacture pipe for other pipeline projects.
As part of its overall duties under its contract with the County, Hill prepared the project plans and specifications; reviewed bids and proposals submitted by pipe manufacturers; recommended a pipe manufacturer (Interpace); and reviewed/approved Interpace's shop drawings on the pipe materials and designincluding the use of class IV wire. Based on Hill's recommendation, the County ultimately contracted with Interpace to manufacture the concrete pipe segments.
The pipeline was completed in October 1978. On November 13,1979, one segment of pipeline broke, and the County commenced an investigation. On December 5, 1980, when Robert Edmunds, an engineer hired by the County, performed a pressure test, another explosion occurred. The pipeline ruptured for a third time in May 1991, and for a fourth time over the Thanksgiving weekend in 1994. All of these ruptures occurred at a level of pressure much less than the 210 pounds of pressure per square inch which the pipeline was designed to bear.
The first trial of this case took place without a jury and resulted in a final judgment for the County. On appeal, the first judgment was reversed and remanded for retrial. This court indicated that an issue to be tried on remand was whether Hill breached its contractual design responsibilities by allowing Interpace to use class IV wire for the pipeline. See CH2M Hill Southeast, Inc. v. Pinellas County, 598 So.2d 85 (Fla. 2d DCA), rev. denied, 613 So.2d 7 (Fla.1992). On remand, the County argued that the breach of contractual responsibilities issue, as stated in the Second District opinion, was not the sole issue to be tried. The trial court entered an order limiting retrial to that sole issue, and this court affirmed that decision in Pinellas County v. CH2M Hill Southeast, Inc., 638 So.2d 68 (Fla. 2d DCA), cert. denied, 513 U.S. 824, 115 S.Ct. 90, 130 L.Ed.2d 41 (1994).
In the current appeal, Hill argues that the County failed to produce sufficient, competent evidence to allow the jury to conclude that Hill breached the applicable *1240 standard of care. Our review of the record indicates there was substantial, competent evidence to support the jury's conclusion that Hill breached the engineering standard of care and therefore breached its contractual duties to Pinellas County. See GNB, Inc. v. United Danco Batteries, Inc., 627 So.2d 492 (Fla. 2d DCA 1993)(function of appellate court is not to reweigh evidence but to view the record to determine if it contains competent and substantial evidence to support conclusions of the trier of fact).
Three engineering experts testified at trial, Dink Henderson, Hill's chief design engineer for this project; Robert Edmunds, the County's expert; and Wayne Brunzell, Hill's trial expert. These experts testified that it was the design engineer's responsibility to review and approve Interpace's proposal for the pipe's materials, design and production. Under the then existing standard of care, Interpace's proposal should have been reviewed to ensure that the design, materials and ultimate product conformed with project specifications and AWWA standards. The County's expert testified that if Interpace's proposal did not conform to project specifications, or AWWA standards, it was the responsibility of Hill's design engineer to discuss any inconsistencies with Interpace and/or request that proposed materials be tested. All three engineers opined that if the Interpace proposal differed from project plans and specifications, it should have been rejected, not approved.
Henderson testified that he checked the Interpace drawings and descriptive data which cited specification A-648-73 and class IV wire, rather than the AWWA specification C301 as called for in the project plan. He admitted he did not conduct any research on class IV wire, and that he could not remember how he reconciled the two different specifications. Henderson concluded that class IV wire was acceptable for use on the County project because he had previously seen it used on similar pipeline projects. Even though he was aware that a higher tensile strength wire could be used instead of the class II wire indicated in the project plan, he was also aware that if a higher tensile strength wire was used it would have to satisfy all other class II wire criteria, e.g., like class II wire, higher tensile strength wire must be free of splits and seams. However, he failed to make any recommendations concerning what should be done to determine the suitability of class IV wire for the project and whether class IV satisfied all other class II wire criteria. Henderson admitted he could have asked for material samples and/or sample testing, but did not.
The County's expert identified several red flags on the Interpace proposal which should have been investigated before Hill approved it. The Interpace proposal cited no nationally approved wire class, and a routine review of the national reference guides would have revealed that the proposed class IV wire was not recognized by the AWWA. Thus, Henderson breached the standard of care by approving the Interpace proposal to use class IV wire in manufacturing pipe for the project without first determining whether the proposed materials would conform with project specifications and AWWA material standards.
Generally, the legal duty imposed upon professionals who contract to provide services is to perform such services in accordance with the standard of care used by similar professionals in the community. Additionally, if the professional contracts to perform duties beyond those required by ordinary standards of care, the quality of that performance must comport with the contractual terms. Lochrane Engineering, Inc. v. Willingham Realgrowth Investment Fund, Ltd., 552 So.2d 228 (Fla. 5th DCA 1989), rev. denied, 563 So.2d 631 (Fla.1990). Based on the foregoing, we find that the County produced sufficient competent evidence to demonstrate that Hill breached its design duties under the Pinellas County contract.
We next turn to the issue of whether the trial court erred in awarding the County prejudgment interest on the jury award of $10,000,000.00, which represents the replacement cost of the pipeline. Hill argues that it was improper to award prejudgment interest on this sum because as of the date of the award, the County had not expended funds to replace the pipeline; therefore, this portion of the jury verdict does not represent *1241 out-of-pocket expenses.[1] We agree and reverse the award of prejudgment interest.
The Florida Supreme Court in Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212 (Fla.1985), addressed the circumstances under which prejudgment interest is appropriate. In Argonaut, the insurance company paid $249,360.51 to the owners of an apartment complex damaged by fire due to the negligence of a May Plumbing Company employee. Argonaut brought a subrogation action against May and its insurers and was awarded a judgment of $187,020.38. The trial court awarded prejudgment interest on this amount. On appeal, the district court reversed the award of prejudgment interest, but the supreme court found that the plaintiff's claim was liquidated and therefore subject to prejudgment interest. The court reasoned that prejudgment interest is another element of pecuniary damages, or, in other words, is a part of the total monetary loss suffered by the plaintiff. With these principles in mind, the court held, "[w]hen a verdict liquidates damages on a plaintiff's out-of-pocket, pecuniary losses, plaintiff is entitled, as a matter of law, to prejudgment interest at the statutory rate from the date of that loss." Id. at 215.
In Black Crow & Eidsness, Inc. v. Cousins Construction Co., 556 So.2d 1146 (Fla. 2d DCA 1989), this court, citing Argonaut, likewise held that a party is entitled to prejudgment interest on out-of-pocket, pecuniary losses once the verdict has liquidated damages as of a date certain. It is clear from the record in this case that the $10,000,000.00 portion of the verdict does not represent out-of-pocket expenditures made by the County. There is no question that the County has not replaced the pipeline. This sum, therefore, cannot be and is not an "out-of-pocket," pecuniary loss.
The County nonetheless argues, relying on Lumbermens Mutual Casualty Co. v. Percefull, 653 So.2d 389 (Fla.1995), that prejudgment interest is appropriate even where no out-of-pocket expenditure has been made by the prevailing party. We believe Lumbermens is distinguishable because it involved the payment of a debt owed under the terms of an insurance contract. The Supreme Court found prejudgment interest appropriate in Lumbermens based on consideration paid by the plaintiff to secure specified sums on the occurrence of certain conditions. Id. at 390. Thus, Lumbermens' contractual breach deprived the plaintiff of bargained for payment and resulted in pecuniary loss presumably established from the date on which Lumbermens wrongfully denied his claim. Moreover, awarding prejudgment interest on a debt, such as the debt owed under the insurance contract in Lumbermens, is appropriate even when there has been no out-of-pocket expenditure by the prevailing party. See Parker v. Brinson Construction Co., 78 So.2d 873 (Fla.1955). This case does not involve such a debt; therefore, Lumbermens is not applicable to this situation.
We affirm the judgment and jury verdict, but reverse the award of prejudgment interest.
LAZZARA, A.C.J., and EVANS, DONALD C., Associate Judge, concur.
NOTES
[1] The County would have been entitled to prejudgment interest on expenditures made to replace any portion of the pipeline, to investigate and inspect the pipeline after it initially failed, to make emergency repairs, and to purchase new rights of way. However, the County conceded that prejudgment interest was waived on these items.