MORRIS, Judge.
In this proceeding, the State seeks cer-tiorari review of the circuit court’s order granting Debra LaFave’s motion for early termination of probation which was entered in direct violation of the negotiated plea agreement she entered into with the State for a downward departure, nonprison sentence. Although the State has no statutory right of appeal in this instance, we hold that we have jurisdiction to review its petition for common law writ of certiorari. We grant the State’s petition in order to correct a departure from the essential requirements of the law resulting in a gross miscarriage of justice.
I. Facts
Debra LaFave, a school teacher, was charged in Hillsborough County with two counts of lewd or lascivious battery, see § 800.04(4)(a), Fla. Stat. (2003), for committing sexual battery on a fourteen-year-old middle school boy. She was also charged in Marion County for committing additional incidents of sexual battery against the same child in that county.
Her two Hillsborough County charges, both second-degree felonies, were each punishable by up to fifteen years in prison. See § 775.082(3)(c), Fla. Stat. (2003). However, under the Criminal Punishment Code, her lowest permissible sentence was 15.1875 years in prison. See §§ 921.0024(2), .00265(1), Fla. Stat. (2003).
*34 Pursuant to a negotiated plea agreement with the State, LaFave pleaded guilty in 2005 to the Hillsborough County charges in exchange for a nonprison sentence of supervision, which was a downward departure from the prison requirements of the Criminal Punishment Code. The circuit court accepted her plea, according to the agreement, and sentenced her to three years of community control to be followed by seven years of sex offender probation. As an express condition of her plea agreement, LaFave agreed to serve her entire sentence and to not seek early termination of probation. This agreement was ratified and confirmed by the circuit court by virtue of its acceptance of her negotiated plea. Subsequent to her plea in Hillsbor-ough County, the State Attorney’s Office in Marion County dropped the Marion County charges against her, deeming the matter resolved by the Hillsborough County disposition.
Six years into her ten-year nonprison sentence, LaFave unabashedly sought early termination of her probation in 2011 in direct violation of her plea agreement. She asked the circuit court to terminate her sex offender probation four years early. On October 3, 2011, over objections from both the state attorney and the Department of Corrections, the circuit court granted her motion and terminated her probation as requested. The circuit court’s order was filed on October 5, 2011. The State filed its petition for writ of certiorari in this court on October 21, 2011.
II. Analysis
A. Jurisdiction.
i. The State has no right of appeal in this case.
LaFave has forcefully argued, and we agree, that the State has no right of appeal in this case. The State’s right to appeal in a criminal case is available only as provided by statute. See State v. McMahon, 94 So.3d 468 (Fla.2012); State v. MacLeod, 600 So.2d 1096, 1097 (Fla.1992). Section 924.07(1), Florida Statutes (2011), sets forth the limited circumstances in which the state has a right to appeal. Rule 9.140(c) of the Florida Rules of Appellate Procedure “serves as the procedural counterpart to section 924.07 [and] lists the same types of orders that the State may appeal in a criminal case.” McMahon, 94 So.3d at 473. Neither the statute nor the rule specifically provides the State with a right to appeal a circuit court order granting early termination of probation.
Pursuant to section 924.07(l)(e) and (i) and rule 9.140(c)(l')(M), the State may appeal an illegal sentence or a downward departure sentence. But there is no authority for the State to appeal either a modification or termination of probation because a modification or termination of probation does not result in the imposition of a sentence. See State v. Blackman, 488 So.2d 644, 644 (Fla. 2d DCA 1986); State v. Gray, 721 So.2d 370, 371 (Fla. 4th DCA 1998); see also State v. Russell, 67 So.3d 1179 (Fla. 4th DCA 2011) (relying on Gray in dismissing a state appeal of an order modifying probation).
In State v. Brooks, 890 So.2d 503 (Fla. 2d DCA 2005), with facts uniquely similar to those in LaFave’s case, we concluded that the State had a right to appeal a circuit court order granting the defendant’s timely motion to reduce or modify a sentence filed pursuant to Florida Rule of Criminal Procedure 3.800(c). As a result of the motion, the circuit court converted the defendant’s prison sentence to sex offender probation. 890 So.2d at 504. We held that because the new modified sentence constituted a downward departure sentence, an appeal was authorized pursuant to section 924.07(l)(i). We con- *35 eluded that the circuit court erred in granting the defendant’s motion and mitigating her original prison sentence to probation because the original prison sentence was a result of a negotiated plea agreement with the State. 890 So.2d at 505. LaFave’s situation is distinguishable from the defendant’s situation in Brooks because LaFave’s early termination of probation cannot be construed as a sentence for purposes of section 924.07(l)(e) and (i), even under the most tortured legal reasoning.
Because the law is clear that the categories enumerated in section 924.07 are the only bases upon which the State may appeal as a matter of right, see, e.g., McMahon, 94 So.3d at 471; MacLeod, 600 So.2d at 1098, and because none of the enumerated categories are applicable in this case, we therefore conclude that the State may not appeal the circuit court order terminating LaFave’s probation.
ii. This is an extraordinary circumstance under which the State may seek common law certiorari review in the absence of a right to appeal.
In Jones v. State, 477 So.2d 566, 566 (Fla.1985), the Florida Supreme Court addressed whether an order dismissing violation of probation charges could be reviewed by certiorari when the district court had already determined that there was no statutory basis for appeal. In deciding that the State could not seek certio-rari review of such an order, the court noted its prior holdings that “no right of review by certiorari exists if no right of appeal exists.” Id. (citing State v. C.C., 476 So.2d 144 (Fla.1985), and State v. G.P., 476 So.2d 1272 (Fla.1985)).
Notably, Chief Justice Boyd — in a special concurring opinion — cautioned that the court’s holding should not be read to mean that “when there is no entitlement to an appeal, certiorari is ipso facto not available as a remedy.” Id. at 567 (Boyd, C.J., specially concurring). Rather, Chief Justice Boyd noted that in G.P., 476 So.2d 1272, the case on which the majority relied in denying the state relief, certiorari was deemed not available because the common law prerequisites for certiorari relief were not met. 477 So.2d at 567. Chief Justice Boyd continued by noting that while “cer-tiorari review may not be made into a substitute [for appellate review], ... the common[ ]law writ of certiorari is within the jurisdiction of the district courts of appeal and issuable in the appellate court’s discretion under certain circumstances when there is no right of appeal.” Id. at 568. Chief Justice Boyd then went on to explain that certiorari review is very limited, is not available to review mere legal error, and should only be exercised where there has been a departure from the essential requirements of the law resulting in a gross miscarriage of justice. Id. at 569.
In State v. Pettis, 520 So.2d 250, 253 (Fla.1988), the Florida Supreme Court cited Jones for the proposition that “no right of review by certiorari exists in criminal cases if no right of appeal exists.” The court limited this holding “to orders of final dismissal” and stated that it should not be “construed to prohibit district courts of appeal from entertaining state petitions for certiorari from pretrial orders in criminal cases.” Id. In his dissent, Justice Shaw stated that “the majority adopt[ed] an overly restrictive view of [the] right to petition for certiorari.” Id. at 256 (Shaw, J., dissenting). Justice Shaw opined that Jones incorrectly relied on G.P., 476 So.2d 1272, which had, in turn, incorrectly relied on C.C., 476 So.2d 144. 520 So.2d at 256. Justice Shaw commented that the issue of the State’s right to seek certiorari review was not ad *36 dressed by C.C. and that the court in G.P. therefore “took a quantum leap by announcing that the state has no greater right by certiorari than it does by appeal.” Id. In doing so, Justice Shaw stated that G.P. and Jones “directly conflict[ed] with decades of well-established case law,” including State v. Harris, 136 So.2d 633 (Fla.1962).
In Harris, the Florida Supreme Court was asked “whether the state has the right to seek certiorari from a decision of a district court in which that court in a criminal case rules adversely to the state and favorably to an accused.” Id. at 634. The court rejected the defendant’s assertion that section 924.07 somehow limited the state’s right to seek certiorari review, stating that “[t]he statute deals only with direct appeals in criminal proceedings and clearly does not and was not intended to proscribe the authority of the state to seek either common law certiorari now exercised by the district courts or constitutional certiorari of the variety now exercised by this Court.” 136 So.2d at 634. Notably, Harris has not been overruled. It was not addressed in the majority opinion in Jones and was only mentioned in passing in Pettis.
We point out that this court has expressed its agreement with Chief Justice Boyd’s view in Jones. In State v. Wilson, 483 So.2d 23, 24 (Fla. 2d DCA 1985), this court interpreted Jones, G.P., and C.C. by stating that
we choose to follow Chief Justice Boyd’s cautionary special concurrence in Jones and not interpret Jones or G.P. to mean that certiorari is never available where a statutory right to an appeal does not exist. Rather, we choose to adhere to the line of cases which grant[s] the state the right to seek the common law writ of certiorari to review a nonappealable interlocutory order where it demonstrates a departure from the essential requirements of law and where there is no other avenue of review.
Id. at 25 (citation omitted).[1]
We recognize that the order in this case is not a type of interlocutory or pretrial *37 order that has been held to be reviewable by certiorari, as addressed in Pettis or Wilson. But the order does not fall into the category of “final orders of dismissal” that are not subject to certiorari review, as addressed in Pettis, Jones, G.P., and C.C. The order terminating LaFave’s probation is a rare, postsentencing order which, for reasons set forth below, constitutes a violation of the plea agreement between La-Fave and the State. The implications of such an order are extremely prejudicial to the State, and the ability of the State to seek certiorari review of such an order, where there is no other avenue for relief, is crucial “to the fair administration of criminal justice” and necessary “to correct an erroneous and highly prejudicial ruling.” Pettis, 520 So.2d at 253.
Accordingly, we rely on the rationale of Harris, Pettis, and Wilson and hold that in this rare instance, the State may seek certiorari review of the circuit court order terminating LaFave’s probation.[2]
Indeed, given the uncertainty of the law in this area (as emphasized by the parties’ briefs in which both sides take inconsistent positions on this issue) and the importance of predictability and availability of review by the state in criminal cases, we hereby certify the following question of great public importance:
IN THE ABSENCE OF A STATUTORY RIGHT TO APPEAL, MAY THE STATE SEEK CERTIORARI REVIEW OF AN ORDER TERMINATING PROBATION WHERE IT CAN SHOW THAT THE CIRCUIT COURT DEPARTED FROM THE ESSENTIAL REQUIREMENTS OF THE LAW BY VIOLATING THE PLEA AGREEMENT BETWEEN THE STATE AND THE DEFENDANT WHICH CALLED FOR NO EARLY TERMINATION?
B. Merits
i. The circuit court was required to honor the negotiated plea agreement which it had previously accepted.
LaFave received the benefit of her bargain by avoiding a lengthy prison sentence required by the Criminal Punishment Code in exchange for her promise not to seek an early termination of probation. Even so, she argues that she should not be held to honor her part of the bargain. She contends that the State is not entitled to relief because it cannot prove that there was an inherent illegality or irregularity that resulted in a gross miscarriage of justice. Her position is that section 948.05, Florida Statutes (2003), allowed the circuit court to terminate her probation early and that the court therefore did not depart from the essential requirements of the law.
Section 948.05 provides that
[a] court may at any time cause a probationer or offender in community control to appear before it to be admonished or commended, and, when satisfied that its action will be for the best interests of justice and the welfare of society, it may discharge the probationer or offender in *38 community control from further supervision.
(Emphasis added.) But while section 948.05 generally provides circuit courts with that authority, a key factor in this case is the fact that LaFave accepted the benefits of a very favorable negotiated plea agreement that expressly prohibited early termination of probation.
Florida courts have routinely recognized that circuit courts lack discretion to modify sentences previously imposed pursuant to plea agreements. See State v. Howell, 59 So.3d 301, 302 (Fla. 5th DCA 2011); State v. Gutierrez, 10 So.3d 158,159 (Fla. 3d DCA 2009); see also Arango v. State, 891 So.2d 1195, 1196 (Fla. 3d DCA 2005) (on motion for rehearing) (denying certiorari “[s]ince the plea bargain ... did not give the trial court any discretion over the length of the sentence” and, therefore, the court was “without the discretion to reduce the agreed sentence”). This is because plea bargains are contracts. See Carson v. State, 37 So.3d 884, 886 (Fla. 1st DCA 2010); Gutierrez, 10 So.3d at 159; Obara v. State, 958 So.2d 1019, 1022 (Fla. 5th DCA 2007); State v. Swett, 772 So.2d 48, 50 (Fla. 5th DCA 2000); Garcia v. State, 722 So.2d 905, 907 (Fla. 3d DCA 1998). And a defendant can “waive any right to which he [or she] is legally entitled under the Constitution, a statute, or a contract.” Garcia, 722 So.2d at 907; State, Dep’t of Health & Rehab. Servs. v. E.D.S. Fed. Corp., 631 So.2d 353, 355 (Fla. 1st DCA 1994); see also Hedrick v. State, 543 So.2d 873, 873 (Fla. 3d DCA 1989) (affirming denial of motion to correct sentence where plea agreement specifically provided that appellant agreed “not to ‘seek early termination ... from either the State Hospital or from probation,’ ” which constituted a waiver of his right to do so; court held that waiver precluded appellant’s request to be given credit for time spent in custody against the incarceration in a mental health facility that was a special condition of his probation).
Thus, where a defendant has enjoyed the benefits of a plea bargain, Florida courts have, not surprisingly, consistently refused to relieve the defendant of his or her burden under the contract. See Carson, 37 So.3d at 886; Gutierrez, 10 So.3d at 159; Swett, 772 So.2d at 52; Garcia, 722 So.2d at 907; State v. Jordan, 630 So.2d 1171, 1172 (Fla. 5th DCA 1993); Novaton v. State, 610 So.2d 726, 728 (Fla. 3d DCA 1992); Hedrick, 543 So.2d at 874; Scott v. State, 465 So.2d 1359, 1361 (Fla. 5th DCA 1985). This is because the defendant’s agreement to the plea is considered “part of a quid pro quo whereby the state has agreed to drop or reduce a charge” or, as in this case, to accept a very reduced sentence. Swett, 772 So.2d at 50. Consequently,
[t]o allow [a defendant] to accept the benefits of a plea bargain, and then years later collaterally attack his own negotiated sentence, would seriously compromise finality, discourage the use of negotiated pleas in the trial courts, deplete judicial resources, and “discourage the state from entering into future plea bargains with other defendants.”
Carson, 37 So.3d at 885 (quoting Gutierrez, 10 So.3d at 159); see also Swett, 772 So.2d at 51 (“A trial court may consider the appropriateness of a sentence which deviates from the sentencing range contained in a plea agreement. However, the court’s authority to impose such a sentence in a plea context is circumscribed.”).
With regard to the circuit court, while it is true that “ordinarily a contract cannot bind one who is not a party thereto or [who] has not in some fashion agreed to accept its terms,” CH2M Hill S.E., Inc. v. Pinellas Cnty., 598 So.2d 85, 89 (Fla. 2d DCA 1992), that principle does not apply *39 here because the circuit court agreed to the terms of the plea agreement when the circuit court accepted LaFave’s plea. Once the circuit court did so, it could no longer modify the terms of the agreement reached between LaFave and the State.
Accordingly, it was an abuse of judicial power resulting in a gross miscarriage of justice for the circuit court to accept the negotiated plea, which included LaFave’s commitment to not seek early termination of probation in exchange for the State’s agreement to a downward departure sentence, and then later grant her motion for early termination. Permitting the circuit court to go behind the terms of the plea agreement would undermine the public trust and confidence in the judicial branch.
ii. The State was not prohibited from using the “no early termination” provision in the negotiated plea agreement.
LaFave contends that this court’s case law specifically prohibits the use of “no early termination” provisions in plea bargains because such provisions divest the Department of Corrections (DOC) of its authority to recommend early termination pursuant to section 948.04(3) and such provisions prevent future courts from exercising discretion to discharge defendants pursuant to section 948.05. See, e.g., Murphy v. State, 976 So.2d 1242, 1243 (Fla. 2d DCA 2008); Swedish v. State, 724 So.2d 640, 640 (Fla. 2d DCA 1999); Jones v. State, 666 So.2d 191, 192 (Fla. 2d DCA 1995); Baker v. State, 619 So.2d 411, 412 (Fla. 2d DCA 1993); see also Arriaga v. State, 666 So.2d 949, 950 (Fla. 4th DCA 1996). However, a crucial distinguishing factor in the above-cited cases is that they do not involve negotiated pleas. Swedish involved the imposition of a sentence pursuant to a conviction after trial, 724 So.2d at 640, and Murphy, Baker, and Arriaga involved the trial court’s unilateral inclusion of the condition, Murphy, 976 So.2d at 1243; Baker, 619 So.2d at 412; Arriaga, 666 So.2d at 949. Jones, 666 So.2d at 192, however, is silent on the issue.[3]
iii. LaFave is bound by the “no early termination” provision of her negotiated plea agreement.
LaFave argues that sections 948.04(3) and 948.05 specifically preclude “no early termination” provisions from being binding, citing Clark v. State, 579 So.2d 109, 109-111 (Fla.1991). However, Clark dealt with specific procedures for enhancing terms of a previously imposed probation pursuant to section 948.06. These are not our facts. Moreover, LaFave has cited no statutory authority precluding the State from inserting a “no early termination” provision in a negotiated plea bargain. Thus, Clark is not applicable.
Furthermore, in Carson, the defendant was placed on drug offender probation pursuant to a negotiated plea, despite the fact that he would not have qualified for that type of probation had he gone to trial and been convicted. 37 So.3d at 885-86. The First District rejected Carson’s argument that his sentence was illegal, stating *40 “[i]n our view, it is not ‘illegal’ to allow a defendant to agree to serve a special type of probation, e.g., because of a substance abuse problem, even though the trial court could not impose such a condition on an unwilling defendant convicted at trial.” Id. at 886. The court also asked and answered its own question as further explanation:
May a court lawfully impose a negotiated sentence that does not exceed the statutory maximum term, but includes terms that the court could not otherwise impose on a defendant without his acquiescence? We think that a trial court has that authority, and we think that the State and the defendant can agree to such terms. Thus, a defendant cannot later collaterally attack his own negotiated sentence.
Id. at 887.
Applying Carson to the facts of this case demonstrates that the State’s inclusion of the “no early termination” provision did not violate sections 948.04(3) and 948.05. Rather, the right to seek early termination was a specific right that LaFave chose to waive in return for a very favorable downward departure sentence that allowed her to avoid going to prison for more than fifteen years. The fact that the circuit court could not have imposed such a condition if LaFave had been convicted after trial or had entered an open plea does not affect the enforceability of the terms of the plea bargain to which she agreed. See Carson, 37 So.3d at 886.
iv. The “no early termination” provision does not violate the doctrine of separation of powers.
The “no early termination” provision is not unconstitutional because it did not divest DOC of its ability to recommend early termination pursuant to section 948.04(3). In fact, in this case, DOC expressly recommended against early termination. See Arriaga, 666 So.2d at 950 (Farmer, J., dissenting) (noting that provision at issue merely stated “no early termination” and therefore did not attempt “to tie the hands of DOC in any way”). Rather, the provision was an express waiver of LaFave’s right to seek early termination. And, as noted previously, a defendant can “waive any right to which [she] is legally entitled under the Constitution, a statute, or a contract.” Garcia, 722 So.2d at 907 (emphasis added). Thus, to the extent that LaFave is asserting some constitutional right based on DOC’s authority to recommend early termination or a statutory right based on the circuit court’s general authority to discharge probationers early, she has waived those rights.
The issue in this case is not whether a trial court may interfere with the functions of the executive branch (of which the state attorney is a part), but rather, the issue is whether a party may contract away certain rights. While a non-party to a contract may retain certain rights, if that nonparty’s actions frustrate the contracting parties’ intent, courts will act to effectuate the parties’ intent. See, e.g., Hashem v. State, 61 So.3d 1290, 1290 (Fla. 3d DCA 2011) (involving DOC’s allocation of credit for time served which effectively violated sentence imposed as a result of a plea agreement; court held that “[i]f the sentence, as written, cannot be carried out because of DOC’s guidelines, then the defendant is entitled to be resen-tenced in a manner that effectuates the intent of his plea agreement”); Dellahoy v. State, 816 So.2d 1253, 1253 (Fla. 5th DCA 2002) (holding that “DOC’s forfeiture of the [appellant’s] gain time cannot be countermanded by the court, but neither can that forfeiture thwart the plea bargain”); Williams v. Dep’t of Corr., 734 So.2d 1132, 1133 (Fla. 3d DCA 1999) (noting that “any *41 attempt to compel enforcement of the negotiated plea agreement [which contemplated that appellant would serve a certain period of time] would be a usurpation of the DOC’s executive authority” but remanding case for resentencing “in a manner that effectuates the intent of the plea agreement and takes into account the effect of the DOC’s forfeiture of [the appellant’s] gain time or allows [the appellant] to withdraw his plea”). Because the intent of the plea agreement was that LaFave would not receive early termination of her probation, the circuit court was obligated to deny LaFave’s motion or, at the very least, to permit the State to withdraw from the plea agreement.
III. Conclusion
Accordingly, we grant the State’s petition for writ of certiorari, quash the order of the circuit court, and remand with instructions that LaFave’s probation be reinstated pursuant to the terms and conditions of her negotiated plea agreement and original sentence in this case.
Petition granted; order quashed; question certified.
WHATLEY and WALLACE, JJ„ Concur.

. Prior to Jones and Pettis, this court and others have permitted the state to seek certio-rari review where the state has not had a means for appellate review pursuant to statute. See, e.g., State v. Gibson, 353 So.2d 670, 671 (Fla. 2d DCA 1978) (reviewing order withholding adjudication of guilt and placing defendant on probation; noting that order was not appealable under section 924.07 because it was not an order imposing sentence, but treating case as a petition for writ of certiorari); State v. Wilcox, 351 So.2d 89, 90 (Fla. 2d DCA 1977) (same); State v. Beardsley, 464 So.2d 188, 188-89 (Fla. 4th DCA 1985) (acknowledging that rule 9.140(c) did not provide the state with the right to appeal an order that withdrew a previously entered adjudication of guilt, but concluding that certio-rari review was appropriate because there was "simply no authority to support what the trial judge did in this case”). Subsequent to Jones and Pettis, we acknowledged that "[cjertiorari is an original proceeding designed to provide extraordinary relief [and] is not intended to provide review when an error can be repaired on appeal.” State v. Bjorkland, 924 So.2d 971, 975 (Fla. 2d DCA 2006) (holding state could not seek certiorari review of an order when state had the right to repair the error "by pretrial appeal” but failed to file a timely notice of appeal within fifteen days).
Also subsequent to Jones and Pettis, the Fifth District acknowledged that certiorari review is available to review nonappealable orders in criminal cases in limited circumstances. See Rogers v. State, 918 So.2d 390, 391 (Fla. 5th DCA 2006) (on motion for rehearing) (holding that court lacked jurisdiction to review order denying defendant's motion to modify probation but noting that "[tjhere are extraordinary circumstances in which such orders may be reviewable by means of certiorari ... where there has been ‘a violation of a clearly established principal of law resulting in a miscarriage of justice’ " (quoting Combs v. State, 436 So.2d 93, 96 (Fla.1983))).

. In so holding, we note that there are two cases from the Third District that are in conflict with our view that an absence of a right to appeal an order does not automatically preclude the possibility of certiorari review. State v. Jordan, 783 So.2d 1179 (Fla. 3d DCA 2001) (en banc) (declining to exercise certio-rari jurisdiction over sentencing order which departed from terms of a substantial assistance agreement between defendant and state); State v. F.G., 630 So.2d 581 (Fla. 3d DCA 1993) (declining to exercise certiorari jurisdiction over juvenile disposition orders). We do not certify conflict, however, because the facts of those cases are distinguishable from the facts in this case.

. Garcia, 722 So.2d at 907, references Jones as involving a negotiated plea. However, the Jones opinion makes no mention of a negotiated plea; therefore, the Garcia court incorrectly analyzed Jones. The plea in Garcia was a negotiated plea, and the Garcia court distinguished Jones on the basis that the early termination provision in Garcia only prohibited the defendant from seeking early termination prior to five years of successful completion of probation (the original term of probation was seven years). 722 So.2d at 907. According to the Third District, the early termination provision there did not divest DOC of its authority nor did it prohibit a future court from terminating the defendant’s probation prior to the full seven-year term. Id.