# Third District Court of Appeal

## State of Florida

Opinion filed December 29, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-125
Lower Tribunal No. 19-13301
_____

## GE Real Estate Services, Inc., d/b/a Keller Williams Realty Premier Properties,

Appellant,

vs.

## Mandich Real Estate Advisors, Inc.,

Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Peter R. Lopez, Judge.

Douglas H. Stein, P.A., and Douglas H. Stein, for appellant.

Haber Law, P.A., and David B. Haber and Ariella Gutman, for appellee.

Before LOGUE, HENDON, and LOBREE, JJ.

HENDON, J.

GE Real Estate Services, Inc., d/b/a Keller Williams Realty Premier Properties ("KW") appeals from the trial court's dismissal with prejudice of its second amended complaint against Mandich Real Estate Advisors, Inc. ("Mandich"). We affirm.

Facts

Fred Afif ("Afif") and Louis Erice ("Erice") are licensed real estate agents who were employed by KW. George Smith ("Smith") is a Florida licensed real estate broker, formerly affiliated with Miami New Realty ("MNR") and Multifamily Real Estate Group, Inc. ("MREG"). In January 2017, Afif, Erice, and Smith entered into a Commission and Non-Circumvent Agreement ("Commission Agreement") whereby Afif and Erice would procure purchasers of hotel properties, Smith would procure sellers of hotel properties, and they would split the real estate commissions. The Commission Agreement contained a "non-circumvent" provision that provided that neither KW nor Smith on their own could enter into sales agreements and cut the other out of the commission.[1] The Commission

_____

[1] The provision states:

> 4. Non-Circumvent. The parties acknowledge that the sale or purchase of property by a Protected Party is a business opportunity to all parties. Therefore, the parties agree not to circumvent, avoid, or bypass, directly or indirectly, each other for the purpose of avoiding payment of the Commission by entering into any agreement for the sale and purchase of property with,

Agreement specifically referred to the River Park Hotel and Suites, Miami, Florida, as the only asset under consideration for sale or lease by Afif, who was the only broker involved in full negotiation with the buyer and seller. After the Commission Agreement was executed, Afif introduced Smith to his client, who did business through their wholly owned corporation, Sanctuary Resort and Marina, LLC ("Buyers"). The sale of the River Park Hotel property did not close.

Over a year later, around March of 2018, Smith, acting as broker, identified another hotel opportunity for the Buyers to purchase, the Sands Harbor Resort and Marina property ("Sands Harbor"). On March 23, 2018, Smith formed a new corporation, Mandich. On May 10, 2018, Smith became the qualifying broker for that company when it became licensed as a brokerage company by the Florida Department of Professional Regulation. On May 11, 2018, Smith and the Buyers entered into a

---

or to a Protected Party that does not include the payment of the Commission. In the event a party circumvents the other in breach of this paragraph, the non-breaching party shall be entitled to a Commission in the amount of 50% percent of the total AMOUNT OF COMMISSION for the Protected Party's property, with said 50% percent Commission being agreed upon as liquidated damages for the failure of the breaching party to perform the duties, liabilities and obligations imposed upon it by this Agreement. The parties acknowledge that this liquidated damages provision is acceptable because of the difficulty, inconvenience and uncertainty of ascertaining actual damages.

Broker's Fee Agreement, whereby the Buyers agreed to pay Smith a flat fee of $75,000 identified as a "finder's fee," not a "commission," for his services related to identifying the property and its sellers, subject to the transaction closing. No commission was otherwise agreed upon under the terms of the Broker's Fee Agreement. It is important to note that when Smith and the Buyers entered into the Broker's Fee Agreement, Smith was still affiliated with MREG.

In October 2018, the Sands Harbor property transaction closed, and the Buyers disbursed the $75,000 finder's fee to Mandich, Smith's current brokerage company.

Afif and Erice, individually, and KW sued Smith, individually, and Mandich for breach of the Commission Agreement, and for civil conspiracy, seeking damages as a result of the Sands Harbor sale. Count 1 alleged that upon accepting Smith as its Director and Broker, Mandich assumed the obligations of the Commission Agreement. The complaint further alleged that Mandich breached the non-circumvent provision of the Commission Agreement by excluding KW, Afif, and Erice from the Sands Harbor negotiations and the Broker's Fee Agreement. The civil conspiracy count alleged that Smith and Mandich conspired to defraud KW, Afif, and

4

Erice by excluding them from the negotiations and the Sands Harbor finder's fee.

Smith and Mandich moved to dismiss the complaint. At the hearing, the trial court recognized that Afif and Erice were voluntarily dropped as parties, leaving KW as the sole plaintiff. The trial court then concluded that the breach of contract count against Mandich must be dismissed with prejudice because Mandich was not a party to the Commission Agreement. The court further dismissed the civil conspiracy count without prejudice and with leave to amend. The trial court specifically stated that it was possible for KW to state a cause of action for civil conspiracy only if it could show that Mandich had knowledge of the Commission Agreement and agreed to circumvent it.

KW filed its Second Amended Complaint. The only counts relevant to this appeal are the counts against Mandich for tortious interference with a contractual or business relationship, and against Mandich (and the Buyers) for civil conspiracy. After a hearing, the trial court dismissed all of KW's claims against Mandich with prejudice and denied KW's motion for re-hearing.

Examining de novo the allegations of KW's amended complaint, we conclude that KW's claim of tortious interference against Mandich, based

5

on a theory of imputed knowledge of the Commission Agreement, fails as a matter of law. People's Trust Ins. Co. v. Alonzo-Pombo, 307 So. 3d 840, 842 (Fla. 3d DCA 2020) (holding a dismissal for failure to state a cause of action is reviewed de novo); United Auto. Ins. Co. v. Law Offices of Michal I. Libman, 46 So. 3d 1101, 1103 (Fla. 3d DCA 2010) (holding a motion to dismiss for failure to state a cause of action admits all well pleaded facts as true, as well as reasonable inferences that may arise from those facts). In this instance, the trial court correctly concluded that further opportunities to amend the complaint would be futile. See Broz v. R.E. Reece, 272 So. 3d 512 (Fla. 3d DCA 2019).

A claim for tortious interference with the Commission Agreement required KW to set forth four elements in its complaint against Mandich: 1) the existence of a business relationship between KW and a third person, in this case, Smith, under which KW has legal rights, 2) Mandich's knowledge of the relationship, 3) Mandich's intentional and unjustified interference with the relationship that induced or otherwise caused Smith not to perform his obligation under the Commission Agreement with KW, and 4) damage to KW resulting from Smith's failure to perform. See DNA Sports Performance Lab, Inc. v. Club Atlantis Condo. Ass'n, 219 So. 3d 107, 110 (Fla. 3d DCA 2017). KW was unable, despite a number of opportunities to amend its

6

complaint, to plead facts that would show Mandich intentionally and unjustifiably interfered with the Commission Agreement resulting in damage to KW, i.e., KW's exclusion from the Broker's Fee Agreement executed by Smith and the Buyers, to which agreement Mandich was not a party.

Further, the Commission Agreement was executed prior to Mandich's existence as a commercial entity and under Florida law, contracts entered into by a real estate agent on behalf of a former do not automatically transfer to, or impute knowledge of prior agreements to, a new brokerage company simply because the agent joined the new brokerage company.[2] See Marks v. M.S.F. Mgmt. Corp., 540 So. 2d 138, 140 (Fla. 5th DCA 1989) (holding the new broker never acquired any interest in the commission agreement because it was not the employing broker when plaintiff's services were performed). The usual rule provides that a contract cannot bind one who is not a party to it or has not in some way agreed to accept its terms. To create a valid contract there must be reciprocal assent to a certain and definite proposition. CH2M Hill Se., Inc. v. Pinellas Cnty, 598 So. 2d 85, 89 (Fla. 2d DCA 1992) (citing In re Estate of Donner, 364

---

[2] Real estate salesmen are prohibited from operating without brokers; commission agreements made by salesmen are enforceable by the broker who is their employer at the time the services entitling the salesman to compensation are rendered. Marks, 540 So. 2d at 140 (citations omitted).

So. 2d 742 (Fla. 3d DCA 1978)). The trial court repeatedly charged KW with amending its complaint to allege some direct knowledge and purposeful interference by Mandich, and KW was unable to do so, thereby failing to fulfill elements of the cause of action for intentional interference.

KW's claim against Mandich for civil conspiracy similarly fails. KW alleges that Mandich knew of the prior Commission Agreement between Afif and Erice (working for KW) and Smith (working with MNR/MREG) and intentionally conspired with Smith and the Buyers to circumvent the Commission Agreement by agreeing with Smith to execute the Broker's Fee Agreement with the Buyer, and by passively accepting the contractually agreed finder's fee from the Buyer once the Sands Harbor sale closed. KW alleges it is entitled to payment of its share of the finder's fee for the Sands Harbor purchase by virtue of its rights under the prior Commission Agreement for the River Park Hotel, which sale never closed. We disagree.

In Florida, "[a] civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." Raimi v. Furlong, 702 So. 2d 1273, 1284 (Fla. 3d DCA

8

1997). "General allegations of conspiracy are inadequate." <u>World Class Yachts, Inc. v. Murphy</u>, 731 So.2d 798, 799 (Fla. 4th DCA 1999). A complaint must "set forth clear, positive, and specific allegations of civil conspiracy." <u>See</u> <u>id</u>. Smith's allegedly tortious actions – procuring a ready and willing buyer, executing the Broker's Fee Agreement with the Buyer, and failing to include Afif and Erice in the deal – occurred prior to his employment with Mandich. Smith's allegedly tortious acts cannot be imputed to Mandich, which entity was not a party to either the Commission Agreement or the Broker's Fee Agreement. Mandich cannot be found liable for civil conspiracy merely by passively accepting a finder's fee. "To assume or speculate . . . that the [appellees] participated in a conspiracy . . . merely because they ultimately received some benefits from the [investments] is insufficient for the imposition of liability against them." <u>Raimi</u>, 702 So. 2d at 1285; <u>Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc.</u>, 79 So. 3d 855, 863 (Fla. 4th DCA 2012). As Mandich was not a party to the Commission Agreement, and that agreement is unrelated to the sale of the Sands Harbor property, KW has not properly alleged damages as against Mandich. We make no determination regarding the issue of KW's damages for any tort committed by Smith individually and prior to his employment with Mandich.

We thus affirm the trial court's dismissal with prejudice of the tortious interference and conspiracy counts against Mandich, after KW's repeated failure to amend the complaint to state those causes of action as against Mandich.

Affirmed.