513 So.2d 686 (1987)
Melvin GROSSMAN and Bliss & Nyitray, Inc., Appellants,
v.
SEA AIR TOWERS, Limited, Appellee.
Nos. 84-1649, 84-1650 and 84-1901.
District Court of Appeal of Florida, Third District.
September 1, 1987.
Rehearing Denied October 26, 1987.
*687 Carey, Dwyer, Cole, Eckhart, Mason & Spring, Miami, and Mitchell Katler, for appellant Bliss & Nyitray, Inc.
Peters, Pickle, Flynn, Niemoeller & Downs and Steven R. Berger, Miami, for appellant Melvin Grossman.
Steel, Hector & Davis and Patricia A. Seitz, Miami, for appellee.
Before HUBBART, DANIEL S. PEARSON and FERGUSON, JJ.

REVISED OPINION
FERGUSON, Judge.
Defendants, Melvin Grossman, an architect, and Bliss & Nyitray, Inc. (Bliss), structural engineers, appeal from a judgment entered on a jury verdict in favor of plaintiff, Sea Air Towers, Limited (Sea Air), finding the defendants liable for damages caused by a construction "underdesign." Bliss also appeals from an adverse judgment of the court entered on Grossman's cross-claim for indemnity.
Sea Air hired Grossman to design a 357-unit luxury high-rise rental apartment building, to be located in Hollywood, Florida. Grossman hired Bliss to prepare the structural plans and specifications. It is undisputed that a deck of the building, open to heavy service vehicles, was underdesigned to support the traffic load and that as a result the deck eventually collapsed. The first issue at trial was whether the statute of limitations barred Sea Air's cause of action. The issue on the merits, assuming that the action was not time-barred, was who, as between the two defendants, should pay.
The evidence at trial showed that Grossman gave Bliss architectural specifications for the building, which called for a deck to serve as a bridge between the building's entrance and upper level service facilities. The design contemplated that uncompacted garbage would be transported to the outside of the building for street pickup by the city's waste department. The architectural design showed an extremely restricted traffic pattern which would prevent large heavy vehicles from entering and maneuvering on the deck. Bliss completed the structural plans in May, 1969.
In April, 1970, the deck was under construction when the concrete was poured and reinforcing bars were installed. Approximately two months later, and over a year after the structural plans had been completed, Sea Air retained a private garbage collection company. The new service required that 60,000-pound trucks use the deck to Sea Air's service facilities to pick up compacted trash[1] and garbage. Sea Air instructed Grossman to redesign the deck and entranceway to give larger trucks unrestricted access. Testimony was presented that Grossman sent Bliss revised drawings of the entrance changes which called for unrestricted vehicular traffic and that accordingly Bliss made structural revisions for changes to the boiler room and loading area.
*688 In September, 1970, Sea Air received its certificate of occupancy. Very soon thereafter there were cracks in the deck, leakage into the garage area below, and vibrations from the loading ramp area. Bliss made on-site inspections following complaints from Sea Air and concluded: "there is no condition here related to structural adequacy and no evidence of deflection as a result of overloading." The complained of conditions continued over a period of years.
The concrete deck finally collapsed on July 5, 1981. As a result there were interruptions and changes in Sea Air's building operations, particularly garbage disposal, parking, and deliveries. Construction repair work caused noise and dust which Sea Air claimed caused tenants to leave the building, resulting in business losses.
After a six-day trial, the jury returned a verdict in favor of Sea Air in the amount of $540,000 and assessed eighty percent of the fault against Bliss and twenty percent of the liability against Grossman.
Both defendants contend that the jury verdict on the liability question was not supported by the evidence; that the award of damages, based on lost income rather than net loss profits was erroneous; and that the cost to repair the collapsed deck and to increase its load capacity was an incorrect measure of damages. Bliss contends that the court's finding and judgment against it on Grossman's cross-claim for indemnity was contrary to law.
We first address those findings made by the jury which must be affirmed. The factual determination on the statute of limitations question, that Sea Air did not have notice of a latent defect in the underdesigned traffic deck prior to its collapse, is supported by the evidence. See Board of Trustees v. Caudill Rowlett Scott, Inc., 461 So.2d 239 (Fla. 1st DCA 1984), rev. denied, 472 So.2d 1180 & 1182 (Fla. 1985); Perez v. Universal Eng'g Corp., 413 So.2d 75 (Fla. 3d DCA 1982), remanded, 451 So.2d 463 (Fla. 1984). There is also evidence in the record to support the jury's determination that both Grossman and Bliss were liable for Sea Air's loss. A jury verdict which finds support in the record will not be disturbed on review. Helman v. Seaboard Coast Line R.R., 349 So.2d 1187 (Fla. 1977); Underwriters Nat'l Assurance Co. v. Harrison, 338 So.2d 58 (Fla. 3d DCA 1976).
On the first of two damage issues we affirm the judgment as to lost rents. Contrary to the appellants' contentions that the $299,543.33 lost rents award is based on gross rentals alone or speculation, there is evidence in the record, reasonably certain in nature, that the losses were substantial and that the jury deducted operating costs in arriving at the amount. F.A. Conner v. Atlas Aircraft Corp., 310 So.2d 352 (Fla. 3d DCA 1975), cert. denied, 322 So.2d 913 (Fla. 1975).
The second issue on damages is whether the cost of increasing the deck's load-bearing capacity should be an element of damages assessed against the architect and engineer for failing to advise Sea Air of a need for an increased structural capacity after the traffic pattern was redesigned to accommodate heavy service vehicles. It is significant on this point that neither the architectural specifications nor the structural design was deficient for the original intended purpose. The proper measure of damages, therefore, should have been the amount necessary to restore the deck to its original condition plus related losses occasioned by the interruption of or adverse impact on business operations. See Grossman Holdings Ltd. v. Hourihan, 414 So.2d 1037 (Fla. 1982) (for breach of contract to construct a specified product, the injured party can get compensatory damages for all unavoidable harm that builder had reason to foresee when contract was made, less unpaid contract price). Costs incurred in increasing the load capacity of the deck would have been the owners' responsibility even if there had been no negligence on the part of the defendants. See Temple Beth Sholom & Jewish Center, Inc. v. Thyne Construction Corp., 399 So.2d 525 (Fla. 2d DCA 1981) (if in course of making repairs owner adopts a more expensive design, recovery should be limited to what would have been reasonable cost of repair according to original design).
*689 Bliss seeks reversal of the trial court's judgment for Grossman on the latter's cross-claim for indemnity, contending that the jury's finding that Grossman was legally at fault bars indemnity. The parties agree that the verdict form reflects a finding that Grossman was both legally at fault and vicariously liable  an obvious inconsistency.
In paragraph four of the verdict the jury found Grossman 20% legally responsible for Sea Air's damages:
4. State the percentage of any negligence which was a legal cause of loss, injury or damage to Plaintiff SEA AIR TOWERS, LTD. that you charge to:

 Defendant MELVIN GROSSMAN 20%
 Defendant BLISS & NYITRAY, INC. 80%
 Defendant SEA AIR TOWERS, LTD. 0
 ___
 TOTAL SHOULD EQUAL 100%

In paragraph seven of the verdict form the jury found Grossman's negligence to be vicarious:
7. Was the negligence on the part of Defendant/Cross-defendant MELVIN GROSSMAN:
PRIMARY ____ VICARIOUS X 
Neither party objected to the verdict form.
After the jury had been discharged the court considered the cross-claim for indemnity and entered a judgment for Grossman on a finding that his fault was only vicarious. The question presented by this cross-appeal is whether the trial court could have entered a judgment for Grossman on the cross-claim in light of a jury finding, albeit conflicting with another finding by the written verdict, that Grossman was 20% at fault.
At the outset we note that failure to object to the obvious inconsistency in the jury verdict constituted a waiver. Gould v. National Bank of Florida, 421 So.2d 798 (Fla. 3d DCA 1982). In our view the parties, well aware that the cross-claim for indemnity remained pending, assumed the risk of having the trial judge resolve the jury's intent in deciding the key issue, i.e., whether Grossman's negligence was active or vicarious. The principle we apply is that a decree comes to the appellate court with a presumption of correctness and will be upheld if supported by valid grounds. Ray v. Dock and Marine Constr., Inc., 183 So.2d 237 (Fla. 3d DCA), cert. denied, 192 So.2d 489 (Fla. 1966).
There is ample evidence that Bliss was aware that an architectural redesign required an enhanced structural support system and that Grossman relied on Bliss' expertise to reinforce the structure accordingly. There is also evidence that the jury requested and was given a workable definition of "vicarious liability" shortly before it returned a verdict, from which it may be inferred that the jury meant, consistent with a reasonable version of the evidence, that Grossman's liability was solely vicarious. No basis for disturbing the court's judgment on the indemnity claim is presented.
That part of the judgment awarding Sea Air damages for costs incurred in increasing the load-bearing capacity of its traffic deck is reversed, otherwise the judgment is affirmed. The judgment on the indemnity claim is affirmed.
NOTES
[1] Sea Air purchased a trash compactor in October, 1969 in contemplation of the change to a private waste collection system. Compaction reduces trash to approximately one-fourth of its original volume, thus a truckload of compacted trash weighs four times as much as a truckload of uncompacted trash.