552 So.2d 228 (1989)
LOCHRANE ENGINEERING, INC. and Frank N. Anderson, Appellants,
v.
WILLINGHAM REALGROWTH INVESTMENT FUND, LTD., et al., Appellees.
Nos. 88-1501 and 88-1502.
District Court of Appeal of Florida, Fifth District.
October 12, 1989.
Rehearing Denied November 21, 1989.
*229 James C. Mize, Jr., of Bull & Mize, Orlando, for appellant Lochrane Engineering, Inc.
John H. Bill of Allen, Brown & Builder, P.A., Winter Park, for appellant Frank N. Anderson.
Marvin E. Rooks of Rooks & Willingham, Maitland, for appellees Willingham Realgrowth Investment Fund, Ltd., et al.
COWART, Judge.
This case involves the proper measure of damages for breach of implied warranty by the seller of new residential units where *230 the septic tank sewage disposal system was inadequate. This case also involves the liability of, and the proper measure of damages against, a design engineer who negligently designed the inadequate but repairable septic tank system.
A landowner-developer-seller (Anderson), constructing certain residential units for sale, had plans prepared by Walmsley and hired a general contractor (Nubar), a civil engineer (Lochrane) and a septic tank subcontractor (Seagrave-Brownie) to install a septic tank sewage disposal system. The buyer (Willingham) from the developer-seller found the sewage system inadequate and sued all who were involved (except Walmsley) on various theories. The developer-seller cross-claimed against the engineer and the septic tank contractor.
At trial, two experts suggested three possible remedies for the insufficient septic tank and drain field sewage disposal system. The expert (Carson) for the plaintiff-buyers was of the opinion that the best possible solution was to connect the units to a City of Orlando central sewage system and he estimated the engineering cost to study the feasibility of that alternative at $17,300 and, if it were found feasible, estimated the actual cost of such connection at $94,820. The expert (Barnes) for the septic tank contractor (Brownie) was of the opinion that the problem was that the drain fields were too small to handle the quantity and quality of the effluent from the septic tanks but that the septic tank system was repairable on-site in either of two ways: (1) by adding a secondary tank and enlarging the drain fields at an estimated cost of $800 per system or a total of $8,000, or (2) by installing an aerobic system to aerate and improve the quality of the effluent from each tank at an estimated cost of $2,500 per system or a total of $25,000.
The buyer testified that the buyer had paid $3,000 to pump the septic tanks out. The trial court entered a judgment for $45,000 against the developer-seller, the septic tank contractor[1] and the engineer. The developer-seller and the engineer appeal.
The trial court found the developer-seller liable to the buyer on theories of negligence and implied warranty. The seller's legal duties to the buyer were ex contractu and not ex delicto. This means that the seller's obligations and liabilities to the buyer were founded not in the breach of the general public duty, imposed by law, to use due care, the breach of which is the tort of negligence, but in contract, either from express promises or promises implied by law from the factual relationship of the parties. The proper theory of recovery was not for the tort of negligence but the breach of a warranty implied by law by consumer protection minded courts in the sales of real estate as an exception to the late common law rule of caveat emptor, specifically, the breach of an implied warranty of fitness for habitation.[2] Of course the defects in the sewage disposal system were latent.
Although the buyer bought five residential duplex units (ten dwelling units) as an investment for rental, we apply Gable v. Silver, 258 So.2d 11 (Fla. 4th DCA 1972), cert. dismissed, decision adopted, 264 So.2d 418 (Fla. 1972) and not the narrow exception for investment-related improvement of vacant land made in Conklin v. Hurley, 428 So.2d 654 (Fla. 1983). We therefore affirm the judgment finding the seller of the new residential units impliedly warranted to the buyer that the units' sewage disposal systems were adequate to serve the normal needs of such units.
The $45,000 damage award against the developer-seller was composed of $3,000 for maintenance (meaning the cost of pumping out the septic tanks to make the inadequate system temporarily functionable), $25,000 for installation of an aerobic system and $17,000 for an engineering study to determine the feasibility of connecting these residential units to a municipal *231 central sewer system. In announcing its decision, the trial court expressly relied on the expert Barnes, whose opinion was that the septic tank system while inadequate, was repairable. The testimony of that witness would have supported a trial court decision that, as a practical matter, a satisfactory on-site repair to the sewer system as originally designed could have been accomplished by the expenditure of $8,000 for more drain field area and a second septic tank rather than the more expensive installation of an aerobic system which was not part of the original design. While we seriously considered reducing the damage award to $8,000 we finally decided to defer to the trial court's discretion on this point.[3]
If defective construction can be repaired, the proper measure of the owner's damages is the cost to repair which substantially gives the owner that to which he is entitled either under an express or implied contract.[4] In this case, the buyer entered into a purchase contract with the developer-seller before the units in question were constructed based on plans and specifications for the proposed construction; therefore, the relationship between the developer-seller and the buyer in this case was essentially the same in law as that between a construction contractor and an owner[5] and here the plans did not call for the residential units to be connected to a municipal central sewer system (nor for the septic tank to have an aerobic system) but only for a standard septic tank-drain field sewage disposal system. The buyer (owner) was not entitled to damages relating to either the cost of an engineering feasibility study to connect to a central sewer system or the cost of making such connection and was certainly not entitled to both the $25,000 cost of repairs by adding the aerobic system and the $17,000 cost of studying the feasibility of connecting to the municipal sewer system and that $17,000 item of damages is hereby reversed and stricken.
As stated above, the developer-seller cross-claimed against the engineer (Lochrane), who allegedly designed the septic tank system as installed, and against the septic tank contractor, who installed the system. These cross-claims, for indemnity and contribution, were to the effect that if the developer-seller was found liable to the plaintiff-buyer because of defects in design or construction of the septic tank system, then, for the same reasons, the developer-seller was entitled to recover from the engineer or the septic tank installer, or both. At the close of the non-jury trial, the trial court stated that because the developer-seller had not gone forward (meaning had not called witnesses to present testimony) with the counterclaims, they were dismissed; but the trial court, without stating the legal theory upon which it was done, held the engineer and the septic tank installer, neither of whom had contractual privity with the plaintiff-buyer, both jointly and *232 severably liable with the developer-seller to the buyer for the entire amount awarded the buyer as damages. A proper legal theory for that result is not clear from the record or arguments on appeal.[6] In any event, and on whatever theory, surely an obligor who has voluntarily undertaken, but who has willfully or negligently failed to perform, an express contractual obligation to deliver goods or services to a contract obligee, does not have a duty or obligation implied by law to a third party greater in degree of required performance or in measure and amount of damages, than that expressly promised and owed to the contract obligee. Specifically, the engineer in this case should not be liable to the plaintiff-buyer for more money damages than the engineer would have been liable to the developer-seller.
The duty of a professional who renders services, such as a doctor, lawyer, or engineer, is different from the duty of one who renders manual services or delivers a product. The contractual duty of one who delivers a product or manual services, is to conform to the quality or quantity specified in the express contract, if any, or in the absence of such specification, or when the duty and level of performance is implied by law, to deliver a product reasonably suited for the purposes for which the product was intended (such as is involved in this case, the implied duty to deliver an adequate septic tank system) or to deliver services performed in a good and workmanlike manner. However, the duty imposed by law upon professionals rendering professional services is to perform such services in accordance with the standard of care used by similar professionals in the community under similar circumstances.[7] The measure of damages for breach of such different duties is likewise often different.
If a fixed-price contractor agrees to install an adequate drain field and installs a 1,000 square foot drain field which is later determined to be insufficient and to need 200 square feet more area, the contractor, being liable for the cost of repairs, is liable to the owner in damages for the cost of installing the additional feet of drain field. However, if a knowledgable owner retains a civil engineer, knowledgable as to hydrogeology and drain field design and requests a professional opinion as to specifications for a drain field adequate for a three-bedroom house on a certain lot and, after doing the necessary study and field test to evaluate the soil conditions, the water table elevation, variable seasonable weather factors, the proximity of other drain fields, and all other relevant factors, the engineer states his opinion (by word or design specification) that a 1,000 square foot drain field would be adequate and the owner has that system installed, and later it is determined that a 1,200 square foot drain field was necessary for an adequate system, the engineer, not being an insurer or guarantor of his professional opinion, would not be liable to the owner for professional malpractice (negligence) unless it was also determined that in forming and expressing his opinion that a 1,000 square foot drain field would be adequate, the engineer was negligent by falling below the level of performance of the average reasonable and prudent engineer performing similar professional services in the particular community. *233 Assume further that it was determined that the engineer was professionally negligent, what would be the proper measure of damages? Is the engineer, like the fixed-price contractor, liable to the owner for the full amount of installing an additional 200 square foot of drain field? Not necessarily. Assume that the engineer had originally specified 1,200 square feet of drain field (or that the engineer in this case had originally specified an aerobic system) the owner, not the engineer, would have paid for the additional 200 feet of drain field (or the aerobic system). The owner, not the engineer, should pay for the additional 200 feet of drain field whether originally specified and then installed, or later found to be needed and obtained, because the necessity for the additional 200 feet of drain field was caused by the owner's need to dispose of the sewage produced by the structure served and was not caused by the engineer's failure to have originally correctly estimated the quantity of drain field necessary to meet that need. This does not mean that an engineer is never liable for damages that properly flow from his professional negligence. He is liable when damages are legally caused by his professional negligence as when an insufficiently designed structure fails and the failure causes damages. Also, if the cost of later installing the additional 200 feet of drain field costs more than it would have cost if installed as part of the original undertaking, the engineer would be liable for the difference as well as any other consequential damages.[8] Unfortunately this case was not presented nor tried upon these legal principles. There is inadequate expert testimony: not as to what was wrong with the original septic tank system, and not as to what might repair or fix its deficiencies but to establish that the engineer's original design and opinion deviated from the proper standard of care. However, this exact issue was not properly presented and preserved for review. Similarly there was inadequate evidence as to a difference, if any, between later repairing or improving the insufficient septic tank system and the cost of originally installing an adequate system, for which difference the engineer would be liable in damages if legally liable at all. This is the type of matter that gives an appellate court concern when it endeavors to reach a just result based on application of the correct legal principles but the issues under correct principles of law have not been properly presented to the trial court and properly preserved for appeal.
The engineer should not have been held jointly and severably liable with the developer-seller for the full damages for which the developer-seller was liable to the buyer under the theory of implied warranty. The developer-seller's cross-claim against the engineer should not have been dismissed merely because the developer-seller, as cross-claimant, did not affirmatively put on evidence if the cross-claim was supported by evidence presented by any party in the case and it was. Accordingly, the judgment of the buyer (appellee Willingham Realgrowth Investment Fund, LTD.) against the engineer is reversed and the buyer's judgment against the developer-seller (and the septic tank installer who did not appeal) is affirmed as to the amount of $28,000 and judgment in indemnity is entered in favor of the developer-seller (Frank N. Anderson) and against the engineer (Lochrane Engineering Inc.), in the amount of $3,000 representing the consequential damages resulting from the necessity *234 of pumping the septic tank to make the system useful until permanently repaired. Other than as here modified, the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART.
DANIEL, J., concurs.
COBB, J., concurs in part, dissents in part, with opinion.
COBB, Judge, concurring in part, dissenting in part.
I concur in vacating the $17,000.00 award for the plaintiff, Willingham, the amount for the feasibility study, for the reasons set forth in the majority opinion. I would further reduce the remaining award to $11,000.00, the amount necessary to repair and refurbish the existing drain field system, which was all that Willingham bargained for. See Campbell v. Rawls, 381 So.2d 744 (Fla. 1st DCA 1980). Willingham did not bargain for an aerobic system or a connection to the Orlando central sewage system.
I would affirm a judgment for Willingham in the amount of $11,000.00 against both the developer (Anderson) and the engineer (Lochrane) based upon the former's warranty and the latter's negligence, as factually determined by the trial court. Lochrane negligently caused damage during construction of the properties, thus is liable ex delicto to the buyer, Willingham. See Parliament Towers Condominium v. Parliament House Realty, Inc., 377 So.2d 976 (Fla. 4th DCA 1979); Navajo Circle, Inc. v. Development Concepts Corp., 373 So.2d 689 (Fla. 2d DCA 1979); Luciani v. High, 372 So.2d 530 (Fla. 4th DCA 1979). This is not a situation wherein the defendant expert, Lochrane, was simply a consultant outside the "chain of construction," the situation this court recently considered in E.C. Goldman, Inc. v. A/R/C Associates, Inc., 543 So.2d 1268 (Fla. 5th DCA 1989).
Despite the inherent inconsistency in combining the doctrines of comparative fault and joint and several liability,[1] there is nothing under extant Florida law which precludes a joint and several judgment in this case for Willingham against Lochrane and Anderson. In point of fact, Lochrane does not contend on appeal that it cannot be the subject of a joint judgment together with Anderson in favor of Willingham.
I also disagree with the majority in respect to Anderson's indemnification claim against Lochrane. The latter's negligence was in advising the contractor and developer to install both septic systems for each duplex in the rear yard, rather than having one in the front and one in the rear as originally designed. This caused the two systems in each rear yard to have inadequate drain fields. There is no evidence whatsoever that, had the systems been installed as originally designed, there would have been any additional costs incurred by the developer (Anderson). Cf. Soriano v. Hunton, Shivers, Brady & Associates, 524 So.2d 488 (Fla. 5th DCA), review denied, 534 So.2d 399 (Fla. 1988); Grossman v. Sea Air Towers, Ltd., 513 So.2d 686 (Fla. 3d DCA 1987), review denied, 520 So.2d 584 (Fla. 1988). Therefore, I would reverse the trial court's denial of Anderson's indemnification claim and remand for entry of judgment in that regard in the amount of $11,000.00 against Lochrane based on the latter's active negligence.
NOTES
[1] The septic tank contractor does not appeal.
[2] Gable v. Silver, 258 So.2d 11 (Fla. 4th DCA 1972), cert. dismissed, decision adopted, 264 So.2d 418 (Fla. 1972); Schmeck v. Sea Oats Condominium Association, Inc., 441 So.2d 1092 (Fla. 5th DCA 1983); Putnam v. Roudebush, 352 So.2d 908 (Fla. 2d DCA 1977).
[3] In Campbell v. Rawls, 381 So.2d 744, 746 (Fla. 1st DCA 1980), the appellate court reversed the trial court as to the measure of damages for repairing an expressly warranted air conditioning system, stating:

However, we must reverse the trial court's ruling that the appellees are entitled to damages measured by the cost of installation of two new air-conditioning systems, rather than the cost of repairing the existing system. We hold that under the circumstances presented, the damages recoverable by appellees must be limited to the repairs necessary to place the existing system in working condition, not in such condition as would be necessary to guarantee its working life for any specific period of time, because no such guarantee was in the agreement between the parties. In the case of a breach of contract, the purpose of compensation is to restore the injured party to the condition which he would have been in had the contract been performed. Those damages which are the natural and proximate result of the breach are recoverable. See generally 17 Fla.Jur.2d Damages § 26.
The Rawls can neither receive more than they bargained for nor be put in a better position than they would have been had the contract been performed. Meyers v. Antone, 227 A.2d [56] at 59 [D.C.App. 1967].
[4] McCormick, Handbook on the Law of Damages § 168 (1935).
[5] In this regard, see the helpful annotation relating to the proper measure of damages for breach of a construction contract, Annot., Damages  Breach of Construction Contract, 41 A.L.R. 4th 131 (1985), especially § 37, Costs of Repair and Measure Where Defects are Repairable, and § 66(c), Septic System Correction.
[6] Perhaps the basis for holding the engineer and septic tank installer, neither of whom had privity with the plaintiff-buyer, is similar to the basis for A.R. Moyer, Inc. v. Graham, 285 So.2d 397 (Fla. 1973). See also E.C. Goldman, Inc. v. A/R/C Associates, Inc., 543 So.2d 1268 (Fla. 5th DCA 1989).
[7] See e.g., Ahimsa Technic, Inc. v. Lighthouse Shores Town Homes Development Company, 543 So.2d 422 (Fla. 5th DCA 1989). Sometimes the professional opinion of a competent physician is that a certain medical treatment will cause his patient to recover but it does not. Sometimes a competent attorney is of the professional opinion that the assertion of a particular legal theory of recovery or defense will cause his client to prevail at trial but it does not. Likewise sometimes in the professional opinion of a competent engineer a certain quantity or quality or design of something or the other will accomplish a certain purpose but it does not. In such matters the result does not ipso facto establish that the professional opinion was below the standard for professional competence when given, although later, in obvious hindsight, the professional opinion was not correct. Cf. Bayshore Development Co. v. Bonfoey, 75 Fla. 455, 78 So. 507 (1918)
[8] While not the focus of the main issue in that case, the above measures of damages were involved in the case of Soriano v. Hunton, Shivers, Brady & Associates, 524 So.2d 488 (Fla. 5th DCA 1988), where a structural engineer designed the steel framework for a bank building and it was determined during the construction of the building that the steel design was deficient and additional engineering expenses were required to prepare a new structural design which new design required the installation of additional steel, the installation of which required tearing out some of, and shoring up some of, the partially constructed building. The appellate court held that the structural engineer was not responsible for cost of the additional steel which would necessarily have been incurred and paid for by the owner had the modification been a part of the original design (and because the owner was the party who actually benefited from the modifications). The structural engineer properly conceded that he was responsible for the additional engineering expenses and for the out-ofsequence construction costs.
[1] See §§ 768.81(3), (4)(a), Fla. Stat. (1987); Smith v. Department of Insurance, 507 So.2d 1080, 1091 (Fla. 1987); and Garcia and Rice, Joint Tortfeasor Liability: Inconsistencies and Inequities of Florida Law, The Florida Bar Journal (June 1989).