CONNER, J.
In this case, the school board contracted with an architectural firm (“the architect”) to perform design services for the renovation of a high school. After construction was completed, the school board sued the architect, contending that numerous “change order items” (“COIs”) were a breach of the contract to provide design services. The COIs were generated due to changes in the initial design plans to meet building code requirements after construction commenced. A jury determined that the architect did not breach the standard of care as to COI 51, the most expensive COI litigated. As to other COIs for which liability was admitted (“COIs-liability-admitted”), the jury awarded damages. However, the circuit court granted remitti-tur as to seven of the COIs-liability-admit-ted.
Regarding COI 51, the school board appeals, contending that the circuit court erred by 1) failing to grant a partial summary judgment determining that the architect breached the standard of care; 2) allowing improper expert testimony regarding the standard of care; and 3) improperly instructing the jury on a negligence standard of care instead of a breach of contract standard of care. The school board also appeals the remittitur of damages. Without discussing all of the issues raised on appeal, we agree that the circuit court erred, and we reverse as to COI 51; as to the COIs-liability-admitted and re-mittitur, we affirm in part and reverse in part.

Factual Background and Circuit Court Proceedings

The parties entered into a forty-eight-page contract for design services for major renovations to a high school. The renovations involved changes to existing buildings and the construction of new buildings. *1062 The design services were to be provided in six phases.[1] As typical for such projects, the school board retained the ongoing services of a peer reviewer to monitor and offer a second opinion of the design plans.
During the initial phase of performance under the contract in which the preliminary design plans were being developed for bidding by contractors and submitted for approval by the school board project manager, the peer reviewer submitted comments to a portion of the initial design plans. The peer reviewer contended that a portion of the plans were not code-compliant regarding fire safety. Specifically, the peer reviewer contended that a third floor balcony on one of the buildings required construction of a staircase as an emergency exit in case of a fire. The architect disagreed and suggested an alternative solution to meet the fire code standards that did not require the construction of a staircase. The record shows that the matter was discussed and negotiated over several months before the project proceeded to bidding by general contractors. The peer reviewer repeatedly disagreed with the architect’s alternative solution. The design contract provided that the school board’s chief building official (“building code official”) had final authority to determine the correct interpretation of all applicable building codes, statutes, and regulations. The architect believed its alternative solution was approved by the building code 'official based on oral statements made by the building code official during a meeting with the architect and the school board project manager to discuss the peer review comment regarding the need for a staircase to the third floor balcony. That meeting occurred prior to submission of the initial design plans for bidding by contractors.[2]
After the construction bidding process was concluded and construction commenced, the building code official determined the design plans were not code-compliant and a staircase was required for the third floor balcony. That decision resulted in the redrafting of plans by the architect and the implementation of COI 51. It also resulted in the school board paying more for the renovation because the general contractor’s bid did not contemplate the construction of a staircase, and the initial construction had to be reworked.
There were many other COIs implemented during the construction phase of the project to address other design issues for other parts of the project.
Contending that all of the COIs increased the cost of construction and represented instances of breach of performance under the design contract, the school board filed a three-count complaint against the architect seeking damages for breach of contract, breach of contractual indemnity, and breach of common law indemnity.
The architect alleged two affirmative defenses: one asserting that “[the school boardj’s damages are ‘betterment’ and therefore barred,” and the other asserting that “any of [the school boardj’s claims determined to be First Cost Items, should be barred.” The concept of “first cost,” a *1063 key issue in this case, will be discussed below more fully. Notably, the applicable standard of care was not raised in the affirmative defenses or any defensive pleading. As discussed below, the architect raised the issue by way of a counterclaim for declaratory judgment.
The case was initially assigned to the general civil division of the circuit court. As the case neared trial, it was transferred to the “complex civil litigation” division of the circuit court.

COI 51

As to COI 51, the thrust of the school board’s suit was that the architect did not provide initial design plans for bidding by contractors that were code-compliant. One of the issues raised pretrial was the standard of care applicable to the contract between the parties. The school board contended that the standard of care was whether the initial plans were code-compliant as required by the contract (breach of contract standard). The architect contended that the standard of care was whether it performed its duties with ordinary and reasonable skill (negligence standard). The school board filed and argued two separate motions for partial summary judgment on liability as to COI 51, seeking a judgment determining that there was breach of duty, so that if granted, the only issue to be resolved by the jury would be the amount of damages. Both motions for partial summary judgment were denied on the basis that there were material disputes of fact. Neither order denying the motions ruled upon the applicable standard of care.
As stated above, the architect also sought a ruling on the applicable standard of care by filing a counterclaim for declaratory judgment seeking a judicial interpretation of the design contract. The architect filed a motion for summary judgment as to its counterclaim. The school board filed a cross-motion for summary judgment seeking a ruling on the applicable standard of care as well. Unfortunately, due to the case being handled by three different judges and being shifted to the complex civil litigation division, the cross-motions for summary judgment on the counterclaim were not addressed until after the jury was selected, but prior to opening statements.
The circuit court denied both cross-motions for summary judgment on the counterclaim, but after considering the arguments raised, decided the applicable standard of care for the presentation of issues to the jury.[3] The circuit court interpreted the contract to limit damages to those arising from “negligent performance.” As a result, the school board was prohibited from presenting evidence indicating that the initial design plans were not code-compliant. Additionally, the jury was instructed on a negligence theory of liability as requested by the architect, rather than a breach of contract theory of liability as requested by the school board. The jury was specifically instructed not to decide if the design plans were code-compliant.
The jury returned a verdict determining there was no breach of duty by the architect regarding COI 51.

COIs-liability-admitted

Prior to trial, the circuit court entered an agreed order granting partial summary judgment of liability as to fifty-five COIs that were separate from COI 51. In addition to making the amount of damages the *1064 sole issue to be resolved by the jury, the agreed order regarding COIs-liability-ad-mitted also granted the architect the right to seek a setoff for the “first costs and/or betterment credit.”
The jury awarded damages for each of the COIs-liability-admitted. Post-trial, the circuit court granted remittitur as to seven of the COIs-liability-admitted, which the school board appeals.

Legal Analysis

COI 51

As previously discussed, the school board contended that the applicable standard of care was whether the initial design plans were code-compliant. The architect contended, and the circuit court agreed, the applicable standard of care was whether the architect prepared plans with ordinary and reasonable skill, which is a negligence standard.
The school board argues on appeal that the circuit court imposed a higher standard of care than the standard imposed by the contract when it insisted that the school board had to prove negligence to be entitled to damages. The architect argues on appeal that the standard that the school board sought to apply amounted to a strict liability standard of care. The architect anticipated that the school board would argue the fact that the final plans required a staircase was proof the initial plans were not code-compliant.
The school board argues that the circuit court erred in denying both of its motions for summary judgment of liability as to COI 51, which were heard months before trial commenced. We disagree and affirm the circuit court’s denials of those motions. However, because the circuit court ruled on the applicable standard of care after the jury was selected, we proceed with consideration of the school board’s argument that the circuit court applied an incorrect standard of care at trial after erroneously interpreting the contract.
Where no ambiguity exists with regard to the parties’ intention, the interpretation of the contract is a question of law. Gainesville-Alachua Cnty. Reg’l Airport Auth. v. R. Hyden Constr., Inc., 766 So.2d 1238, 1239 (Fla. 1st DCA 2000). Pure questions of law are subject to a de novo review. Petit v. State, 92 So.3d 906, 910 (Fla. 4th DCA 2012).
Before discussing our analysis regarding interpretation of the contract, it is useful to discuss a unique aspect of design services rendered by architects and also the common law standard of care regarding architects. In addition, it is useful to point out some additional aspects of the disagreement between the parties.
We agree with an observation the school board made in a footnote in its initial brief:
Lawyers, unlike design professionals, are ethically prohibited from contracting to guarantee the outcome in a case. Doctors are practically precluded from guaranteeing an outcome from a particular medical procedure. Architects, however, are required hy law to comply with codes in designing improvements to real property.
(emphasis added). Unlike other professionals, a unique problem faced by architects is that there are codes and ordinances which more specifically detail how their jobs are to be performed. Those codes and ordinances often provide standards by which other service providers, such as contractors, subcontractors, and inspectors, can contest whether the architect has performed properly as a project is being built- in other words, before the final rendition of the services. Frequently, the building and zoning codes, ordinances, statutes, and regulations are subject to interpretation. In all instances, there is a *1065 person or entity with final authority to declare what the code, statute, or regulation means. Usually, the final authority is an agency or public official. Sometimes, a court of law must be the final authority. In this case, by the terms of the contractual agreement, the building code official, an employee of the school board, was to be the final authority as to the interpretation of the applicable building codes, statutes, and regulations.
When there is a dispute between an architect and an owner or contractor as to the interpretation of a building code, statute, or regulation, there is a process for resolving the conflict and getting the correct interpretation from the final authority. Regarding the process for getting an interpretation in this case, the school board contends (1) a dispute regarding interpretation of the building codes arose between the architect and the peer reviewer; (2) the architect did not follow proper procedure to secure an official interpretation from the building code official prior to submitting the design plans for bidding by contractors; (3) oral statements by the building code official regarding interpretation of the code are insufficient and the architect should have obtained a written interpretation; and (4) as a consequence of not securing a written interpretation of the building code prior to drawing the design plans for bidding by contractors, the architect assumed the risk and liability that the plans were not code-compliant.
The architect argues that the law does not require architects to perform their services with perfection and contends that the design plans were prepared with ordinary and reasonable skill in accordance with the standard of care applicable to architects. The architect also contends that so long as the final plans used for construction were code-compliant, it met its contractual obligations.
“As a matter of [common] law, professionals rendering professional services are to perform such services in accordance with the standard of care used by similar professionals in the community under similar circumstances.” Trikon Sunrise Assocs., LLC v. Brice Bldg. Co., 41 So.3d 315, 318 (Fla. 4th DCA 2010); see also CH2M Hill Se., Inc. v. Pinellas Cnty., 698 So.2d 1238, 1240 (Fla. 2d DCA 1997); Lochrane Eng’g, Inc. v. Willingham Realgrowth Inv. Fund, Ltd., 552 So.2d 228, 232 (Fla. 5th DCA 1989). More pertinent to the issues on appeal,
[t]he law is clear that an architect owes a duty of due care to his client in arranging site plans and drawing buildings which are in conformance with building and zoning codes as well as other similar local ordinances. The architect is liable to his client in tort and contract when that duty is breached as to any damages proximately caused by such breach.
Robsol, Inc. v. Garris, 358 So.2d 865, 866 (Fla. 3d DCA 1978); see also Krestow v. Wooster, 360 So.2d 32, 32 (Fla. 3d DCA 1978). Under the common law, “[t]he architect’s undertaking does not imply or guarantee a perfect plan.” Bayshore Dev. Co. v. Bonfoey, 75 Fla. 455, 78 So. 507, 510 (1918). Thus, so long as the architect uses the ordinary and reasonable skill other architects in the community use to draft plans that are code-compliant, the common law standard of care is met. See Edward J. Seibert, A.I.A., Architect & Planner, P.A. v. Bayport Beach & Tennis Club Ass’n, 573 So.2d 889, 892 (Fla. 2d DCA 1990) (holding that the architect fulfilled the common law duty by determining in his professional opinion that only one exit was required).
Where an express provision within a professional services contract provides for a heightened standard of care, however, the professional must perform in accor *1066 dance with the terms of the contract. CH2M Hill Se., Inc., 698 So.2d at 1240 (“[I]f the professional contracts to perform duties beyond those required by ordinary standards of care, the quality of that performance must comport with the contractual terms.”). In other words, an architect can contractually commit to perform under a standard of care higher than the common law standard.
The school board argued to the circuit court that the standard of care usually applicable to architects was heightened by three provisions of the contract:
2.1.3 As to all services provided to this Agreement, the Project Consultant [the architect] shall furnish services by experienced personnel and under the supervision of experienced professionals licensed in Florida and shall exercise a degree of care and diligence in the performance of these services in accordance with the customary professional standards currently practiced by firms in Florida and in compliance with any and all applicable codes, laws, ordinances, etc....
2.1.4 As to any drawings, plans, specifications or other documents or materials provided or prepared by Project Consultant or its Sub-Consultants, the Project Consultant agrees same:
.4 Comply with all applicable laws, statutes, rules and regulations, building codes and Owner's [the school board] guidelines and regulations, which apply to or govern the Project
2.1.5 All professional design services and associated products or instruments of those services provided by the Project Consultant shall:
.1 Be in accordance with all applicable codes, laws, and regulations of any governmental entity, including, but not limited to, [list of regulatory entities] with the Owner serving as the interpreter of the intent and meaning of ... any other applicable code[.]
(emphasis added).
However, the architect argued, and the circuit court agreed, that the applicable standard of care was governed by section 8.1.1., which provides:
To the fullest permitted by law, the Project Consultant shall indemnify and hold harmless the Owner ... from and against any and all liability, claims, causes of action (by whomever brought or alleged and regardless of the legal theories upon which the liability, claims or causes of action are based), losses, damage, costs, expenses and fees ... which are or may be imposed upon, incurred by or asserted against Owner ... to the extent said liability, claims, causes of action, losses, damages, costs, expenses and/or fees are caused by the Project Consultant’s negligent, reckless or intentional wrongful acts or omission, error, misconduct, or commission.
(emphasis added).
In interpreting a contract, the court must review the contested phrases or words as part of the whole contract, rather than looking at the words or phrases separately. Meyer v. Caribbean Interiors, Inc., 435 So.2d 936, 938 (Fla. 3d DCA 1983) (citation omitted). Wherever possible, the provisions of the contract must be read so that they do not conflict even though at first glance they may appear conflicting. Id. “Where a contract is clear and unambiguous, it is the best evidence of the intent of the parties and its meaning and legal effect are questions of law for determination by the court alone.” Critchlow v. Williamson, 450 So.2d 1153, 1156 (Fla. 4th DCA 1984) (citation omitted). If *1067 the contract is internally inconsistent, it is the duty of the circuit court to resolve the inconsistency in a manner that renders the contract meaningful and uses a reasonable interpretation of the provisions contained within the document. Id. at 1156-57. Moreover,
[i]n the interpretation of contracts, it must be assumed that each clause has some purpose, and if the question is, as here, whether clauses are compatible or contradictory, the court should interpret the contract in such a way as to give effect to every provision, unless such an interpretation distorts the plain meaning of the agreement.
Hillsborough Cnty. Aviation Auth. v. Cone Bros. Contracting Co., 285 So.2d 619, 621 (Fla. 2d DCA1973).
The architect argued to the circuit court and on appeal that section 8.1.1 applies to first-party liability. Although the school board somewhat inconsistently argued to the circuit court, and on appeal, that section 8.1.1 applies to third-party liability and not first-party liability,[4] we agree with the school board that section 8.1.1 applies to third-party liability, not first-party liability.
“Indemnity is generally defined as the ‘duty to make good any loss, damage, or liability incurred by another’ or ‘[t]he right of an injured party to claim reimbursement for its loss, damage, or liability from a person who has such a duty.’” Wendt v. La Costa Beach Resort Condo. Ass’n, 64 So.3d 1228,1230 (Fla.2011) (quoting Black’s Law Dictionary 837 (9th ed. 2009)). “Indemnity contracts are subject to the general rules of contractual construction ... [and] must be construed based on the [express] intentions of the parties.” Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 643 (Fla. 1999).
Section 8.1.1 unambiguously states that
the Project Consultant shall indemnify and hold harmless the Owner ... from and against any and all liability, claims, causes of action ... losses, damage, costs, expenses and fees ... which are or may be imposed upon, incurred by or asserted against Owner.
(emphasis added). We do not construe the use of the terms “imposed upon” and “incurred by” to refer to first-party liability; instead, we construe those terms to refer to situations in which the school board may face vicarious liability. Our construction that article 8, and in particular, section 8.1.1, was intended to apply to third-party liability is supported by additional language in sections 8.1.2 and 8.1.3:
8.1.2 In any and all claims against the Owner by an employee of the Project Consultant, or anyone for whose acts the Project Consultant may be liable .... 8.1.31 In the event that any claims are brought or actions filed against the Owner ....
Three of the four sections comprising article 8 of the contract, entitled “Indemnifica *1068 tion Clause,” contain language making it clear that the context of the article applies to situations in which claims or suits are brought “against the Owner.”[5] Thus, we conclude that section 8.1.1 is a contractual indemnity agreement by the architect to compensate when a third party is injured; it would not affect the architect’s first-party liability for failure to deliver professional services in accordance with the agreement (count 1 for breach of contract).
Even if we agree with the architect that section 8.1.1 applies to first-party claims, we do not agree with the architect’s and circuit court’s interpretation of the contract to limit first-party claims to those caused by negligence. We construe the words “negligent, reckless or intentional wrongful ” as modifying “acts,” rather than “omission, error, misconduct, or commission.” If “negligent, reckless or intentional wrongful ” were intended to modify “omission, error, misconduct, or commission,” the disjunctive “or” would not have been used, and the last portion of section 8.1.1 would have been written:
... to the extent said liability, claims, causes of action, losses, damages, costs, expenses and/or fees are caused by the Project Consultant’s negligent, reckless or intentional wrongful acts, omissions, errors, misconduct, or commissions.
(emphasis added). Because we do not construe “negligent” to modify “omission, error, misconduct, or commission,” we do not construe section 8.1.1 to limit first-party claims to those caused by negligence, if section 8.1.1 applies to first-party claims at all.
Because building codes sometimes require interpretation, risk is frequently involved as to whether design plans are code-compliant. Contracts with architects for professional services usually contain risk-allocation provisions. Kevin R. Sido et al., Architect and Engineer Liability: Claims Against Design Professionals § 5.01[A] (Aspen Publishers, 4th ed. 2014) (“The contract [for services by an architect] contains the key elements of the undertaking, scope of services, payment terms, risk-allocation provisions and other significant agreements.”). We are satisfied that the parties unambiguously allocated to the architect the risk for costs and expenses attributable to design plans that were not code-compliant. We further agree with the school board that the rights and remedies for indemnity regarding negligence pursuant to article 8. were in addition to, and not a limitation upon, the rights and remedies for breach of performance required by article 2.[6]
Applying the legal principles discussed above regarding interpretation of contracts, we agree with the school board that the plain language of sections 2.1.3, 2.1.4.4, and 2.1.5.1 requires, during all phases of the architect’s performance, delivery of design plans for a building that would be code-compliant, rather than merely requiring plans prepared with ordinary and reasonable skill services. The fact that all three sections specifically state that all design plans were to be in compliance with all applicable codes, and only once makes reference to “customary professional standards,” persuades us that the architect committed itself to a higher stan *1069 dard. Thus, we reject the architect’s argument that so long as the final plans provide for a code-compliant building, its duty for professional services was met.
We agree with the school board that the circuit court’s erroneous interpretation of the contract resulted in the jury being instructed on an erroneous standard of care, and the circuit court improperly limiting expert testimony to a negligence standard of care. Thus, we reverse for a new trial on the claims involving COI 51. Remittitur of Damages as to COIs-Liability-Admitted
The jury awarded damages for each of the COIs-liability-admitted. The architect moved for remittitur as to ten of the COIs-liability-admitted. The circuit court granted remittitur as to seven of the COIs-liability-admitted: COIs 11, 19, 46, 56, 57, 73, and 93. The school board appeals, contending that the circuit court erred in granting remittitur as to all seven COIs.
As to COIs 46, 56, 57, 73, and 93, the architect’s motion sought remittitur contending that the jury awarded the full amount of the COIs, even though the school board’s own damage expert testified that each of those COIs should be reduced by the amount of “first cost.” As to COIs 11 and 19, the school board’s damage expert opined there was no “first cost” attributable to them, but offered no explanation to support that opinion. On cross-examination, the school board’s damage expert admitted she deferred to the school board’s architectural expert as to whether there was a “first cost” associated with those two COIs.[7] The school board’s architectural expert never offered an opinion as to whether there was a “first cost” associated with COIs 11 and 19; however, the architect’s expert testified that there was a “first cost” associated with both COIs. Thus, the architect contended that because there was insufficient evidence to support an award of the full amount for COIs 11 and 19, remittitur was appropriate to reduce the award by the amount of “first cost” identified by the architect’s expert.
In its written response to the motion, the school board argued that remittitur was not proper because the jury awards were not so excessive as to shock the judicial conscience; it was the jury’s function to weigh conflicting evidence, the jury had a right to disregard expert testimony if it felt it was not credible, and the school board presented competent evidence to support a determination that it was entitled to the full amount that the school board paid for each COL
On appeal, both sides repeat their arguments made to the circuit court, but in a much more abbreviated fashion.
In reviewing the order granting remittitur, we face á preliminary problem: the order does not explain the reason or reasons for granting remittitur, and the record does not contain a transcript of the hearing on the motion for remittitur. We have previously stated that trial courts are required to state their reasons justifying a remittitur. Adams v. Saavedra, 65 So.3d 1185, 1188 (Fla. 4th DCA 2011) (citations omitted). Conclusory justifications without an articulated factual basis are insufficient. Id. at 1188-89; see also Wackenhut Corp. v. Canty, 359 So.2d 430, 434 (Fla.1978) (“In requiring the entry of a remitti-tur to correct an excessive verdict the rule is that the amount of the excess must *1070 clearly appear from the record.”) (citation omitted). A remittitur granted without explanation leaves the appellate court “to grasp at straws” when the order is under review. Wackenhut Corp., 359 So.2d at 434. As the supreme court said in Laskey v. Smith, 239 So.2d 13,14 (Fla.1970),
A jury’s determination of damage is reviewable by the trial judge on precisely the same principles as govern his superintendence of determinations of liability. Mr. Justice Drew stated them clearly in Hodge v. Jacksonville Terminal Company, Fla., 234 So.2d 645, opinion filed April 22, 1970. The record must affirmatively show the impropriety of the verdict or there must be an independent determination by the trial judge that the .jury was influenced by considerations outside the record.

Id.

Either party could have sought leave for this court to relinquish jurisdiction to the circuit court for the entry of an order explaining the reasons for remittitur, but neither party made that request. We decline to relinquish jurisdiction sua sponte. Instead, we have made an independent review of the record to address the school board’s arguments contending that the circuit court erred in granting remittitur. Even without a transcript of the hearing on the motion, we are satisfied that the circuit court agreed with the contentions made in the architect’s motion, which raised arguments solely revolving around the issue of “first cost.”
Before addressing the school board’s arguments on appeal regarding remittitur, it is helpful to discuss the concept of “first cost” as it relates to damages in this case. The architect raised an affirmative defense of “first cost,” asserting that “any of [the school boardj’s claims determined to be First Cost Items, should be barred.” Although neither party, in the circuit court or on appeal, has focused much discussion on the legal support for the concept of “first cost,” and neither party has stated a clear definition of the concept, we use context to determine the meaning. We understand, from the arguments presented in the circuit court and the testimony of experts in the case, that damages collected by the school board for the COIs should not include costs for construction that the school board would have incurred if the initial design plans matched the final design plans.
Regarding the measure of damages in breach of contract cases,
[i]t is well-settled that the purpose of damages is to restore an injured party to the same position that he would have been in had the . other party not breached the contract. Capitol Envtl. Servs., Inc. v. Earth Tech, Inc., 25 So.3d 593, 596 (Fla. 1st DCA 2009); Mnemonics, Inc. v. Max Davis Assocs., Inc., 808 So.2d 1278, 1280 (Fla. 5th DCA 2002). In restoring the injured party to the “same position,” he “is not entitled to be placed, because of that breach, in a position better than that which he would have occupied had the contract been performed.” Madison Fund, Inc. v. Charter Co., 427 F.Supp. 597, 608 (S.D.N.Y.1977) (applying Florida law); see Restatement (Second) of Contracts § 347 cmt. A (1981) (“Contract damages are ordinarily based on the injured party’s expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will ... put him in as good a position as he would have been in had the contract been performed.”).
Lindan v. Dalton Hotel Corp., 49 So.3d 299, 305-06 (Fla. 5th DCA 2010). It would appear that the concept of “first cost” is to assure that a party entitled to damages is not “placed, because of th[e] breach, in a *1071 position better than which he would have occupied had the contract been performed” as agreed.[8] For example, if the school board would have paid a cost for construction in accordance with the code-compliant final design plans, an award of a COI expense against the architect attributable to a change in the initial design plans for the same cost would put the school board in a better position than if the design services had been performed as agreed. Stated another way, if there had been no change between the initial plans drawn for bidding by contractors and the final construction plans, the school board would have been solely responsible for paying all construction expenses incurred for the renovation.
Although our research has revealed no Florida cases discussing the concept of “first cost,” the Fifth District seemed to use a similar concept in Lochrane Engineering, in which it addressed the proper measure of damages against a design engineer who negligently designed an inadequate, but repairable, septic tank system. Lochrane Eng’g, 552 So.2d at 230. In that case, the owner of the property sued the developer who sold the property to him. Id. The developer cross-claimed against the engineer and the septic tank contractor. Id. The expert for the plaintiff opined the best solution was to connect the property to the city’s sewer system and the estimated cost of the feasibility study of that alternative was $17,800. Id. If connection to the sewer system was feasible, the cost of connection would be $94,820. Id. The expert for the defense opined that the inadequate septic system could be repaired in either of two ways: (1) by adding a secondary tank and enlarging the drain fields at an estimated cost of $8000, or (2) by installing an aerobic system to aerate and improve the quality of the effluent from each tank at an estimated cost of $25,000. Id. The trial court entered a judgment against the developer-seller, the septic tank contractor, and the engineer for $45,000. Id. The damage award comprised $3000 for costs to make the system temporarily functional, $25,000 for installation of an aerobic system, and $17,000 for the feasibility study. Id. at 230-31. The Fifth District reversed the award of damages for the feasibility study and directed the trial court to enter a judgment of $28,000 (for costs to make the system temporarily functional and for installation of the aerobic system). Id. at 233-34.
In conducting its analysis regarding the measure of damages against the engineer, the Fifth District used a hypothetical example. Id. at 233. The court said that if an engineer negligently designed a 1000 square feet drain field, and it was subsequently determined that an adequate design required a 1200 square feet drain field, the owner, not the engineer, should pay for the additional 200 square feet of drain field because the necessity for the additional 200 square feet of drain field was caused by the owner’s need to dispose of the sewerage produced. Id. at 232-33. However, the court then observed that this does not mean an engineer is never liable for damages that properly flow from his professional negligence. Id. at 233. The court went on to say, “if the cost of later installing the additional 200 feet of drain field costs more than it would have cost if *1072 installed as part of the original undertaking, the engineer would be liable for the difference as well as any other consequential damages.” Id. The court further concluded a reduction in damages against the engineer was required because “there was inadequate evidence as to a difference, if any, between later repairing or improving the insufficient septic tank system and the cost of originally installing an adequate system, for which difference the engineer would be liable in damages if legally liable at all.” Id. We understand the Fifth District in Lochrane Engineering to be employing a concept similar to “first cost” used by the parties and the circuit court in this case.[9]
The Fifth District has also seemingly employed a-concept similar to “first cost” in Soriano v. Hunton, Shivers, Brady & Associates, 524 So.2d 488 (Fla. 5th DCA 1988), a breach of contract case against an individual architect. In Soriano, a bank hired an architect firm to design a bank building. Id. at 489. The architectural firm subcontracted part of the design plans to Soriano, another architect. Id. After construction commenced, the builder asserted the design plans were defective. Id. The architectural firm disagreed. Id. After two engineering firms were consulted and both engineering firms agreed the design plans were defective, new design plans were prepared which required tearing out some of the partially constructed building and resulted in greater expense to the bank. Id. The architectural firm incurred liability for damages suffered by the bank, and as a result, the architect firm sued Soriano for breach of contract and indemnification. Id. Soriano contended on appeal that he was not responsible for those costs which would have necessarily been incurred and paid for by the bank had the modifications been a part of the original design. Id. The Fifth District agreed and reduced the damage award against Soriano for those costs which would have necessarily been incurred and paid for by the bank had the modifications been a part of the original design. Id. at 490.
We now address the remittitur in this case. The circuit court’s determination on an issue of remittitur is reviewed using an abuse of discretion standard. Rowlands v. Signal Constr. Co., 549 So.2d 1380, 1382 (Fla.1989). As the architect correctly argues, the circuit court is required to order remittitur if: “it appears that the trier of fact ignored the evidence in reaching a verdict or misconceived the merits of the case relating to the amounts of damages;” “the trier of fact took improper elements of damages into account;” and “the amount awarded is [not] supported by the evidence.” § 768.74(5), Fla. Stat. (2013).[10]
The school board argues that the circuit court erred by shifting the burden of proof as to the affirmative defense of setoff. The school board’s argument hinges on the contention that as to COIs 46, 56, 57, 73, and 93, the architect presented no evidence as to the “first costs,” whereas the school board did present such evidence. The school board cites no cases which hold *1073 that the failure to present evidence by the defendant asserting a defense waives the defense, or serves as a procedural bar for the fact-finder to find the defense has been proven, where evidence of the defense is supplied by the plaintiff. Cf. Lochrane Eng’g, 552 So.2d at 233 (“The developer-seller’s cross-claim against the engineer should not have been dismissed merely because the developer-seller, as cross-claimant, did not affirmatively put on evidence if the cross-claim was supported by evidence presented by any party in the case and it was.”).
The school board also argues that the jury was free to accept or reject all expert testimony on “first cost” and could have reasonably concluded there was no “first cost” expense associated with the COIs. However, our review of the record reveals it was the school board, not the architect on cross-examination, which led its damage expert to opine about the amount of “first cost” attributable to each of those COIs. The school board’s damage expert did not opine that the school board was entitled to the full amount paid for those COIs. More importantly, in its closing argument, the school board specifically argued that in calculating damages for the COIs-liability-admitted, the jury should deduct the amount of “first cost” as testified by their damage expert, from the total amount paid by the school board for each COI. Thus, as to COIs 46, 56, 57, 73, and 93, we agree that the record supports the conclusion that the jury ignored the evidence in reaching a verdict, or misconceived the merits of the case relating to the amounts of damages, and remittitur equal to the “first cost” for each of those COIs was proper.
As to COIs 11 and 19, the school board’s damage expert opined that if the initial design plans were code-compliant, the “first cost” associated with those COIs could have been completely avoided. The architect’s expert testified that the “first cost” of COIs 11 and 19 could not have been avoided by an initially code-compliant design. Because there was competent, substantial evidence supporting both sides of the issue of whether “first cost” applied to COIs 11 and 19, it was proper for the jury to decide the amount it awarded, and the circuit court erred in granting remitti-tur as to COIs 11 and 19.
Thus, we reverse the judgment entered in favor of the architect regarding COI 51 and remand the case for a new trial, directing the circuit court to apply the standard of care agreed to in the contract, rather than the common law standard of care applicable to architects. We affirm the circuit court’s order for remittitur and the judgment for damages as to COIs 46, 56, 57, 73, and 93. We reverse the circuit court’s order for remittitur as to COIs 11 and 19 and direct the trial court to enter a judgment for damages in accordance with the jury’s verdict as to those COIs.

Affirmed in part and reversed in part and remanded for further proceedings.

LEVINE and FORST, JJ., concur.

. The six phases were: (1) Schematic Design; (2) Design Development; (3) Construction Document Development; (4) Bidding and Award of Contract; (5) Support of the Construction Contract; and (6) Warranty Administration.

. One of the summary judgment issues argued in the circuit court and on appeal is whether the architect could legally rely on oral statements of approval of the alternative solution made by the building code official. We do not address that issue because the circuit court made no explicit ruling on the

. Neither party has directly appealed the denial of the cross-motions for summary judgment.

. The school board, pretrial, at trial, and on appeal, failed to distinguish liability under count 1 (breach of contract by failure to perform as agreed) from liability under count 2 (breach of contractual indemnity). The architect was able to use this lack of clarity regarding the school board’s theory of liability to persuade the circuit court that the standard of care was whether the architect prepared plans with ordinary and reasonable skill (a negligence standard) by arguing section 8.1.1 was a first-party indemnity agreement requiring proof that damages were caused by negligence. As the architect argues in its answer brief, the school board’s claim under count 2 for contractual indemnity seeking damages for the additional expenses and cost of construction seems to be in the nature of a first-party claim.

. The fourth section, section 8.1.4, contains an acknowledgment that the architect is voluntarily agreeing to indemnify the school board and that the indemnification obligations survive termination of the contract. Section 8.1.4 provides no insight as to whether indemnity is to apply first-party or third-party.

. Article 2 of the contract is entitled "Project Consultant Services and Responsibilities”; section 2.1 is entitled "Basic Services.”

. The school board's damage expert took the position that COIs 11 and 19 were related to COI 51. It appears her deference to the school board’s architectural expert was due to her position that she could offer no opinion as to whether COI 51 was necessitated because the design plans were not code-compliant.

. If the purpose of damages in contract actions is to restore an injured party to the same position that he or she would have been had the other party not breached the contract, arguably speaking, it is the obligation of the plaintiff to factor "first cost" expenses in calculating damages. Neither party raised the issue on appeal or in the circuit court as to which party has the burden of proof regarding "first cost." Thus, we do not address the issue either.

. Although the court in Lochrane Engineering dealt with liability arising from professional negligence, since a breach of duty by a design professional can be pursued, in most cases, as a tort or breach of contract, we see no reason to conclude the Fifth District would have used a different analysis if the suit was for breach of contract.

. We agree with the school board that the amounts awarded for COIs-liability-admitted are not excessive so as to shock the judicial conscience. However, we disagree that such a finding is always necessary to justify remitti-tur.